**HOFFERBERT, Collector of Internal Revenue v. ANDERSON OLDSMOBILE, Inc.**

No. 6395.

United States Court of Appeals
Fourth Circuit.

Argued April 7, 1952.

Decided June 11, 1952.

Hilbert P. Zarky, Special Asst. to the Atty. Gen., (Ellis N. Slack, Acting Asst. Atty. Gen., Lee A. Jackson, Special Asst. to the Atty. Gen., Bernard J. Flynn, U. S. Atty., Baltimore, Md., and Frederick J. Green, Jr., Asst. U. S. Atty., Baltimore, Md., on brief), for appellant.

Roger A. Clapp and John S. Stanley, Baltimore, Md. (Hershey, Donaldson, Williams & Stanley, Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a federal income tax case, involving income and excess profits taxes for the years 1945 and 1946. The Commissioner of Internal Revenue assessed a deficiency tax against Anderson Oldsmobile, Inc., (hereinafter called taxpayer), which was paid, and, upon the overruling of a petition of the taxpayer for a refund, taxpayer brought suit in the United States District Court for the District of Maryland, to recover the alleged overpayment. The District Court found in favor of the taxpayer and the Collector has appealed to us. The facts were all stipulated and the appeal involves only a question of law.

Taxpayer is a Maryland corporation engaged in the automobile service business including the purchase and re-sale of used automobiles. During the tax years in question, while the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., was in force, the taxpayer bought and re-sold automobiles. The cost price of some of these automobiles actually paid by taxpayer was in excess of the ceiling prices officially determined by the Price Administrator.

In the taxpayer's returns, it computed its gross income on the basis of deducting the whole cost price, including the excess over the ceiling price, from the re-sale price. The deficiency tax was computed by the Commissioner on the basis of deducting from the taxpayer's re-sale prices only the amounts of the authorized ceiling prices. The amount of the deficiency assessment for the tax years paid by the taxpayer and now sought to be recovered, is $17,312.02, with interest thereon from the date of payment, October 15, 1947. The sole question involved in this case is whether this action of the Commissioner in so determining the deficiency tax was legally correct. The District Court's decision, in favor of the taxpayer and against the Commissioner, was, we think, correct and must be affirmed.

The Sixteenth Amendment to the Constitution of the United States reads:

· "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Internal Revenue Code:

"Sec. 22. ·Gross Income.

(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" 26 U.S.C. 1946 ed. § 22.

Treasury Regulations 111, promulgated under the Internal Revenue Code:

"Sec. 29.22(a)-5. *Gross Income From Business.* In the case of a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold, plus any income from investment and from incidental or outside operations or sources. In determining the gross income subtractions should not be made for depreciation, depletion, selling expenses, or losses, or for items not ordinarily used in computing the cost of goods sold. * * *"

Much is made in the opinion below, and in the briefs of counsel for the litigants, of a constitutional argument. It is contended by taxpayer, denied by the Collector, that even if Congress had expressly provided that only the ceiling price could be used as a basis for determining taxable income, excluding in terms the difference

between the ceiling prices for the automobiles and those actually paid by taxpayer, such a statute would be void and unconstitutional under the Sixteenth Amendment.

A great deal is said, too, of the distinction between *cost* in the determination of taxable income, and *deductions* allowed the taxpayer. In some instances this distinction is clear; in other cases, particularly as to manufactured goods, the distinction is often technical and economically obscure.

We prefer to base our decision on neither of these two points. We do, however, point out that, in connection with deductions for the carrying on of business, the courts have been construing and applying neither the Sixteenth Amendment nor the general provision of the Income Tax Act as to what constitutes taxable income and what is *cost* in the determination of the amount of such income. In these cases, the decisions have decided, which is essential for deductibility, whether these expenses incurred in carrying on a business were 'ordinary' and 'necessary'.

■ We prefer to place our decision, affirming the District Court, squarely on the ground that Congress intended to tax as income on the sales here before us only the difference between the sales price and the actual cost of the goods sold, even though a part of this cost was paid unlawfully in violation of the Emergency Price Control Act of 1942.

Section 22(a) of the Internal Revenue Code, previously quoted, provides, in part: " 'Gross income' includes gains, profits, and income derived from * * * sales * * *." Section 111(a) of this Code provides: "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain * * *." Section 113(b) reads: "*Adjusted basis.* The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided." And Subsection (a) of Section 113 reads: "*Adjusted basis for determining gain or loss—*

(a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that * * *" (none of the exceptions subsequently set out in the subsection are applicable here). While Treasury Regulations 111, previously quoted, provide: "Sec. 29.22(a)–5—*Gross Income From Business.* In the case of a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold * * *."

Nowhere in the Internal Revenue Act or in the Treasury Regulations is there any intimation that the word "cost", as used in the Act and in those Regulations, is to be denied its actual, economic and ordinary meaning, and is to include only costs that are legally paid, so as to exclude costs actually paid in excess of those prescribed by the Emergency Price Control Act of 1942. The Collector seems to admit this. Thus, in his brief we find:

"The question of the legislative intent thus narrows itself to this—did Congress, in providing for the subtraction of the 'cost of goods' sold in determining gross income, intend that all expenditures, including those incurred in direct violation of other laws enacted by it and in subversion of an important public policy, must, nevertheless, be an offset against gross receipts, just as is true where legitimate costs have been incurred?"

■ The Emergency Price Control Act provides both civil and criminal penalties for violation of the Act, but the Act is silent as to tax consequences. We are unwilling, accordingly, to read into that Act, or into the Internal Revenue Act, a provision that, for tax purposes, the part of the actual cost of goods exceeding the ceiling price must be disregarded in determining the amount of gain or profit on the sale of goods. Had Congress intended a tax-wise penalty for violation of the Emergency Price Control Act, it would have been a simple matter to say this expressly. The question before us is not whether Congress should have here prescribed a tax penalty, but whether Congress has done so.

In his opinion below, Judge Chesnut observed [102 F.Supp. 902, 908]:

"It may properly shock the conscience of the court to find an otherwise reputable business man in flagrant violation of valid laws enacted for public good in war time, but this does not justify applying the somewhat uncertain contours of public policy in the purely mathematical computation of what constitutes income. The taxpayer cannot deny his receipt of income on the ground that it resulted from illegal transactions; but neither can the Commissioner find the existence of income where there is none by reason of illegality. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L. Ed. 1037, 51 A.L.R. 1020; Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884."

Nor is the Collector helped by the recent (and well known) case of Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 499. In that case an optician granted secret kick-backs to oculists on the price of eye-glasses sold by the optician to patients sent by the oculist to the optician. The Supreme Court, reversing the decision of our Court, 4 Cir., 188 F.2d 269, allowed the optician to deduct these kick-backs as an "ordinary and necessary business expense", under Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A). These kick-backs were generally conceded to be immoral and unethical but were not expressly forbidden by law. There the Supreme Court was interpreting a provision of the Internal Revenue Code not before us. And it is not without significance that Mr. Justice Burton's opinion in the Lilly case contained this statement:

"There is no statement in the Act, or in its accompanying regulations, prohibiting the deduction of ordinary and necessary business expenses on the ground that they violate or frustrate 'public policy.'"

There is a line of cases holding that illegal payments are not deductible as "ordinary and necessary business expenses."

Textile Mills Securities Corporation v. Commissioner, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249; United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037; Cohen v. Commissioner, 10 Cir., 176 F.2d 394, 400-401; Rugel v. Commissioner, 8 Cir., 127 F.2d 393, 395. These cases, however, are not quite in point here. They interpret the section of the Internal Revenue Code (mentioned above) dealing with deductions for business expenses. They throw little light on what constitutes "cost", in determining profit, gain or income on sales of goods. And, in the case of sales utterly illegal in themselves, such as the operations of bootleggers and dope peddlers, we know of no case which has failed to permit the deduction of the actual cost of the goods for the purpose of determining the amount of gain. See Rutkin v. United States, 343 U.S. 130, 72 S. Ct. 571; Steinberg v. United States, 2 Cir., 14 F.2d 564; Slavin v. Commissioner, 43 B.T.A. 1100.

The investigations of counsel, and our own independent researches, have failed to find a single case in which the precise question here involved has been decided by a federal appellate court. Two opinions of the federal District Court seem in line with the conclusion reached in our case by the court below. Clark v. United States, D.C. N.D.Tex., —— F.Supp. ——; Herber v. Jones, D.C.W.D.Okl., 103 F.Supp. 210. In the Tax Court, a long line of cases directly in point support the contentions of the taxpayer. See, particularly, the leading case of Sullenger v. Commissioner, 1948, 11 T.C. 1076. See, also, all decided in 1951, Gentry v. Commissioner, C.C.H., Dec. 18, 116(M); Piper v. Commissioner, C.C.H. Dec. 18, 163(M); Baum v. Commissioner, C.C.H. Dec. 18, 210(M); Conner v. Commissioner, C.C.H. Dec. 18, 629 (M); Sol Smith v. Commissioner, C.C.H. Dec. 18, 617(M). Cf. the opinion of our Court in City Ice Delivery Co. v. United States, 4 Cir., 176 F.2d 347, 352; United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521; Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct.

540, 62 L.Ed. 1142; Doyle v. Mitchell Brothers Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054.

A number of cases in the Supreme Court have decided that in order to determine the amount of gain or income, there must be a withdrawal from the gross proceeds of sale of an amount sufficient to restore the existing capital value. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143; Merchants Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751; Doyle v. Mitchell Brothers Co., 247 U.S. 179, 184, 38 S.Ct. 467, 62 L.Ed. 1054. In Goodrich v. Edwards, 255 U.S. 527, 535, 41 S.Ct. 390, 391, 65 L.Ed. 758, Mr. Justice Clarke stated: "It is thus very plain that the statute imposes the income tax on the proceeds of the sale of personal property to the extent only that gains are derived therefrom by the vendor."

Counsel for the Collector rely heavily upon the Wage Stabilization Act of October 2, 1942, 50 U.S.C.A.Appendix, §§ 965, 971, and the case of Weather-Seal Manufacturing Co. v. Commissioner, 16 T.C. 1312 (pending on review in the Sixth Circuit), interpreting and applying this Act. It was specifically provided in this Act that the President should have the power to determine the extent to which any wage or salary payments made in contravention of the Regulations authorized by that Act should be disregarded in determining the costs or expenses of any employer for the purpose of any other law or regulation.

■ The Collector argues that this Act reflects a clear Congressional policy, and that since Congress expressly provided this type of penalty for a violation of Wage Stabilization Regulations, Congress must have intended a comparable penalty for a violation of the Price Regulations authorized by the Emergency Price Control Act. It does not follow that because Congress in express terms provided a specific penalty for a violation of one Act, it thereby intended that a like penalty must attach to the violation of a separate Act. This seems to be clearly borne out by the legislative history of the two Congressional enactments, the Wage Stabilization Act and the Price Control Act.

On September 8, 1950, Congress enacted the Defense Production Act, 50 U.S.C.A. Appendix, § 2061 et seq. As initially enacted, this Act did not provide that violators of ceiling prices should be penalized by having the amount of such violations disregarded in computing their costs or expenses for the purpose of any other law (Sec. 405(a)), although such a provision was originally incorporated in the Act with respect to violations of Wage and Salary Regulations (Sec. 405(b)). In the following year, Section 405(a) of the Defense Production Act was amended by Section 104(i) of the Defense Production Act Amendments of 1951. In this Amendment, for the first time, Congress provided, in terms, that violations of Price Control Regulations might be penalized by the disregarding of costs or expenses for the purpose of any other law or regulation, including the basis in determining gain for tax purposes. See, also, Senate Report No. 2250 on S 3936 page 39; letter from Peyton Ford, the then Deputy Attorney General, to Congressman Brent Spence, Chairman, Committee on Banking and Currency, dated June 4, 1951, explaining the effect of the 1951 Amendment to the Defense Production Act, page 652, Part I, of the Hearings before the Committee on Banking and Currency on H.R. 3871.

Our conclusion then is that, for the purpose of the taxes before us in the instant case, Congress intended that in computing taxpayer's taxable gain, the whole actual cost paid by taxpayer, including the excess over ceiling prices, must be deducted from the prices realized by taxpayer from the sale of the automobiles. The judgment of the District Court is, therefore, affirmed.

Affirmed.