Catherine K. **POORBAUGH**

v.

**UNITED STATES of America,** Appellant.

No. 17865.

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1969.

Decided March 6, 1970.

Elmer J. Kelsey, U. S. Department of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Attorneys, Department of Justice, Washington, D. C., Richard L. Thornburgh, U. S. Atty., W. Wendell Stanton, Asst. U. S. Atty., on the brief), for appellant.

James M. Carter, Chester, Pa. (Goodis, Greenfield, Narin & Mann, Philadelphia, Pa., Norman A. Shaulis, Somerset, Pa., on the brief), for appellee.

Before McLAUGHLIN, FORMAN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal by the United States of America (hereinafter the Government) from a judgment of the United States District Court for the Western District of Pennsylvania. The appellee, Catherine K. Poorbaugh, was granted recovery of the sum of $41,349.78, plus interest, determined to have been erroneously collected as income tax for the calendar year 1962.

Mrs. Poorbaugh is the widow of the late Cloyd G. Berkebile. He died when his privately owned helicopter crashed on July 9, 1962. From 1958 until his death, the decedent operated, as a sole proprietorship, a business which distributed an oil additive known commercially as STP, manufactured by Studebaker-Packard Corporation. Although untrained in accounting procedure, the decedent kept his own records, and reported his income for tax purposes, on a cash basis.[1] At the date of Mr. Berkebile's death there were accounts receivable approximately totaling $58,700, and accounts payable, $167,800.[2] Before December 31, 1962, the decedent's estate had collected receivables of approximately $36,800 and had paid $127,000.[3]

Prior to his death, the decedent and Mrs. Poorbaugh filed joint tax returns for the years 1960 and 1961. For the tax year 1962, Mrs. Poorbaugh filed a joint return in which income and expenses were treated as if both she and the decedent had lived throughout the entire year. As in prior years, income was computed on a cash basis method of accounting. The Internal Revenue Service audited this return and determined that the correct taxable year for the decedent was January 1 through July 9, 1962.[4]

---

1. His tax returns, however, were prepared by accountants.

2. The STP inventory on hand as of July 9, 1962, was valued at $52,000 and was purchased by Mrs. Poorbaugh for that sum and contributed as capital to a new corporation formed by her.

3. The remaining $40,000 in accounts payable were liquidated in succeeding years. Of the outstanding $21,000 in receivables, only $3,000 was ultimately recovered after December 31, 1962. It was apparently conceded that the receivables in issue here were to be considered as in the amount of $36,800 and the payables, $127,000. Appendix 36a et seq.

4. In the District Court the appellee contended that it was permissible to file a joint return treating income and expenses as if the decedent had lived through December 31, 1962. The Court, however, properly concluded:

"[A] short year is still required, even though that short year may be included within the joint return. The authority for this is found in Section 6013(a),

Additionally, it was determined that the $127,000 paid to Studebaker-Packard after July 9, 1962, which represented the decedent's accounts payable, and the $36,800 received after July 9, 1962, which represented the decedent's accounts receivable, should not be included in the short term return. Instead, it was the Commissioner's decision that since the decedent was on a cash basis these accounts should be used in determining the income of the estate for the remaining part of 1962. The exclusion of the accounts payable and receivable from the decedent's return resulted in a tax deficiency of $57,407.20 including interest since the business then showed a profit of approximately $90,000 as compared to a loss when computed with these accounts.

As his authority for excluding the accounts, the Commissioner relied on 26 U.S.C. § 691, which provides for the allocation of taxable income between a decedent and his successors. In pertinent part it states:

"(a) Inclusion in gross income.—

"(1) General rule.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * *

shall be included in the gross income, for the taxable when received, of

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

"(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; * * *."

Prior to the enactment of § 691, all income earned by a decedent whether or not received at death was required to be taxed to him.[5] This was the result of the Supreme Court's decision in Helvering v. Enright's Estate.[6] In *Enright* the Court employed an unusually broad definition of accrual as used in § 42 of the 1939 Code to hold that the decedent's gross income should include his share of profits earned but not received from a law partnership.[7] Under a graduated income tax scheme, by requiring the accrual of all items of income into the last return a severe hardship could result if the decedent was placed in a high income bracket which, in the usual case, would not reflect his true income for that period.

which provides, 'A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income or deductions, except as provided by below: * * * (2) no joint return shall be made, if the husband and wife have different taxable years; except if the taxable year begins on the same day and ends on different days because of the death of either or both, then the joint return may be made with respect to the taxable year of each.'

"The requirement of the taxable year of each, the Court holds, embraces the concept found in Section 443, and a short return for the decedent is the only permissible return."
Poorbaugh v. United States, No. 67-772 (W.D.Pa., November 19, 1968).

5. For a detailed discussion of the provisions for taxing a decedent's income prior

to 1942 see 2 Mertens Law of Federal Income Taxation, §§ 12.100–12.102, pp. 366–374 (1967 revision).

6. 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 (1941). *See also* the companion case, Pfaff v. Commissioner of Internal Revenue, 312 U.S. 646, 61 S.Ct. 783, 85 L.Ed. 1099 (1941) in which the same questions were involved in the case of profits from a medical partnership.

7. Mertens, *supra*, § 12.101, p. 370 states: "[t]he Supreme Court gave the term 'accrued' a much broader meaning than indicated in the Regulations and broader than the meaning as used in accounting practice, which does not ordinarily recognize accruals until there has been a determination of the right to receive and of the amount payable and different from the ordinary accrual concept in effect when the provision was first inserted in the statute."

In order to avoid the result of the *Enright* decision, the Revenue Act of 1942 introduced the concept of "income in respect of a decedent" which is now incorporated in the 1954 Internal Revenue Code as § 691. It is clear from the legislative history that § 691 was intended to avoid this "bunching up" of income by devising an equitable means of treating income earned before death but received sometime thereafter.[8] It is remedial legislation designed to prevent inclusion in the decedent's last return of all income earned by him but not received prior to his death. Accordingly, § 691 provides that all items of gross income not properly includible in the decedent's return will be passed on to his successor. Also, all deductions to which the decedent would have been entitled had he lived are allocated to his successor.[9] The Treasury Regulations under § 691 require that the items of gross income and deductions not properly includible in the decedent's return be determined under the method of accounting employed by him.[10]

The problem inherent in the present case has not appeared where § 691 has been applied heretofore primarily because in those cases a proper method of accounting was used.[11] Had the decedent in the instant case used the accrual system of accounting as required in a business, such as his, carrying an inventory,[12] the outstanding accounts receivable and payable would have been includible in his final return.[13] Since his accounts payable represented in part his cost of goods sold prior to the date of his death, by utilizing the accrual system his receipts from those sales would have been properly matched against the cost of those sales. Under the cash basis method, only money actually received and paid out is accounted for at the end of a taxable period. The result here is that the decedent's final return, computed under his system of accounting, does not credit his receipts with some of the cost of the goods which earned those receipts.

It was the District Court's opinion that notwithstanding the fact that the decedent was on a cash basis, his accounts payable and receivable should be accrued in his final return. In order to reach this result, the District Court noted that § 691(a) (1) provides that only those items of *gross income* not properly includible in the decedent's return are in-

---

8. See Finance Committee Report No. 1631, 77th Cong., 2d Sess., to accompany H.R. 7378, pp. 100–01, sec. 135. See also Estate of Edgar V. O'Daniel v. Commissioner, 10 T.C. 631, 633 (1948).

9. 26 U.S.C. § 691(b) in part provides: "The amount of any deduction specified in section 162, 163, 164, 212, or 611 (relating to deductions for expenses, interest, taxes, and depletion) or credit specified in section 33 (relating to foreign tax credit), in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his death, or a prior period, shall be allowed:" [to his successor].

10. Treas.Reg. § 1.691(a)–1, (b) (1957), reads as follows: "In general, the term 'income in respect of a decedent' refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year *under the method of accounting employed by the decedent.* * * Thus, the term includes—(1) All accrued income of a decedent who reported his income by use of the cash receipts and disbursements method." (Emphasis supplied.)

11. See generally the cases collected in 2 Mertens, *supra*, § 12.102c, pp. 383–87.

12. Treas.Reg. § 1.446(c) (2) (i) (1957) provides: "In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales. * * *"

13. The accrual method of accounting includes items of gross income when all the events have occurred which fix the right to receive or the duty to pay and the amount can be approximated with some accuracy. Under the cash receipts method, items of gross income are not recorded until they are actually or constructively paid or received. See Treas.Reg. § 1.446–1(c) (i), (ii) (1957).

cludible in his successor's. The District Court then found that the Regulations, § 1.61–3, define gross income in a merchandising business as "the total sales, less the cost of goods sold." It was concluded that since the decedent's accounts payable represented his cost of goods sold the only way to determine the items of gross income properly includible in his last return was to include these accounts. The District Court expressed its conclusions as follows:

"The regulations under the 1954 Code, Section 1.61–3 control. 'In the manufacturing, merchandizing or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources.' The phrase which concerns us in this case is 'total sales less the cost of goods sold.' If that definition were read into Section 691(a)(1), it would provide that the amount of all items of *total sales, less the cost of goods sold* in respect of the decedent, which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income of his successors. By implication, it appears to the Court, this means that total sales, less the cost of goods sold, which are includible with respect to the decedent must be included in the tax computed according to the short term period, which in this case is January 1, 1962, to July 9, 1962. In short, cost of goods sold is not a deduction. It is an exclusion from sales. The remainder is 'gross income.'

"The problem is not simply a matter of using a cash basis or an accrual basis in order to determine what period shall be used in determining taxable income; it is much more fundamental. It is to determine to what taxable entity the gross income should be attributed, and it appears to the Court that the statute is clear on that. The gross income, as defined, is allocated between the decedent and his successors in title. While failure to make this allocation with respect to periods of a single taxable entity does not generally present serious statutory and constitutional problems; it certainly does when the failure to make the allocation results in imposing the tax on separate entities such as the decedent and his estate." [14]

■ On this appeal the issue presented is whether the accounts paid and received after July 9, 1962, should be included in the decedent's return. We disagree with the result reached by the District Court. Initially, it should be noted that the very Regulation, § 1.61–3, defining gross income, which influenced the conclusion of the District Court, also provides that "the cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer." [15] When the decedent's cost of goods sold is computed according to his cash basis accounting procedure, the accounts payable at the time of his death must be excluded since they were not paid by him in his lifetime. The only cost of goods sold which may be properly included under his system of accounting are those sums which were

---

14. Poorbaugh v. United States, No. 67–772 (W.D.Pa. November 19, 1968).

15. Treas.Reg. 1.61–3 (1957) provides:
    "(a) *In general.* In a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. Gross income is determined without

subtraction of depletion allowances based on a percentage of income, and without subtraction of selling expenses, losses, or other items not ordinarily used in computing cost of goods sold. *The cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer".* (Emphasis supplied.)

actually paid before July 9, 1962, the end of his taxable year. Moreover, the District Court also ignored the Regulation, § 1.691(a)–1, (b), which provides that income in respect of a decedent must be determined by the decedent's method of accounting.[16] Since it is impossible under the decedent's method of accounting to include in his return the post death liquidation of his accounts payable and receipt of accounts receivable, under § 691 no choice is left except to consider them income in respect of a decedent and account for them in his successor's return.

It is the appellee's contention that if the accounts payable are not included in the decedent's final return the tax will not be computed upon gross income but upon gross receipts or capital, the taxing of which it is said would not be within the scope of the 16th Amendment.[17] We have seen, however, that the Regulation [18] is specific in defining the method of arriving at gross income. Only the costs recognized as such by the method of accounting in use by the taxpayer are permitted to be subtracted from the taxpayer's total receipts to arrive at gross income. Since the $127,000 of costs were not paid at the end of decedent's taxable year which terminated with his death on July 9, 1962, they are not includible. The costs excluded from his return are not being disallowed but are being shifted to the period in which they were

actually paid.[19] Here there appears to be an unfortunate matching of costs and receipts but that is not the fault of the taxing system. Rather, it results from the use of the cash method in a merchandizing business and from the fact that decedent's business came to an abrupt end. That some of his costs are deferred to another period does not result in a tax upon gross receipts or capital as appellee contends, but is on gross income in an amount arrived at in conformity with the definition found in the Regulation.

The cases cited by the appellee in support of her proposition that gross receipts are non-taxable are inapposite to the problem presented here. Generally, these cases held that a taxpayer must be permitted to exclude certain items of cost of goods sold even though those costs represented illegal payments.[20] None of the cases cited by the appellee decided how items of costs should be treated as between the taxable period of a decedent and that of his successor.

Additionally, it is argued by the appellee that an incorrect method of accounting cannot subject a taxpayer to a tax claimed to be on his gross receipts. In support of this argument she relies primarily on Fruehauf Trailer Co. v. Commissioner of Internal Revenue [21] and Underhill v. Commissioner of Internal Revenue.[22] These cases, however,

16. Footnote 10, *supra*.

17. At least in respect of insurance premiums gross receipts have been held to be taxable in Penn Mutual Indemnity Co. v. Commissioner of Internal Revenue, 277 F.2d 16, 20 (3 Cir. 1960).

18. Footnote 15, *supra*.

19. *Cf.* Hagen Advertising Displays, Inc. v. Commissioner of Internal Revenue, 407 F.2d 1105 (6 Cir. 1969).

20. Commissioner of Internal Revenue v. Weisman, 197 F.2d 221 (1 Cir. 1952) and Hofferbert v. Anderson Oldsmobile, 197 F.2d 504 (4 Cir. 1952) dealt with

amounts paid above the OPA ceiling; Pittsburgh Milk Co., 26 T.C. 707 (1956) and Lela Sullenger, 11 T.C. 1076 (1948) considered rebates paid to milk producers. The early case of Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054 (1918) also cited by the appellee, held that the appreciation in market value to a lumber company of lumber stumpage should have been allowed as a deduction in computing an excise tax. It is hardly relevant to the issues involved in the instant case.

21. 42 T.C. 83 (1964).

22. 45 T.C. 489 (1966).

are not persuasive. In *Fruehauf* the Tax Court was concerned with a change in the method of inventorying trailers. Since the change was initiated by the Government, it was held that the new method must be used for all of the years in question despite the fact that the change would yield a windfall to the taxpayer. The Tax Court insisted that the annual accounting concept must be applied fully and uniformly so that opening and closing inventories are computed on the same basis, regardless of the advantage gained by the taxpayer.[23] By analogy it would appear that in the instant case the method of accounting used by the taxpayer must be uniform notwithstanding that it results disadvantageously to the decedent. In *Underhill,* the question was whether under the taxpayer's system of accounting, costs of goods were speculative and therefore not includible as costs until they could be reasonably approximated. That case is basically distinguishable because it involved no application of § 691 to a decedent's tax year and confined itself to the "character of the payment [received by the taxpayer] not the proper method or time of reporting an item the character of which was not in question."[24] Our problem deals explicitly with the decedent's method of reporting and under what conditions it is susceptible of change. The foregoing cases reveal no authority for the proposition that because an erroneous accounting method was adopted by the taxpayer he should not be subject to the tax consequences resulting from that method absent a consent to change it pursuant to the Regulations under 26 U.S.C. § 446(e).[25]

As noted previously, had the decedent used an accrual system his accounts payable and receivable would have been properly includible in his final return. There was not, however, a timely application for permission to change the decedent's system of accounting.[26] Indeed, the District Court properly held that since a request for a change was not filed within the 90 day provision outlined in § 1.446–1(e) (3) of the Treasury Regulations, the Commissioner's decision denying a change was not arbitrary and capricious.[27]

To permit an accrual of the decedent's accounts into his last return would in effect be reverting to the tax scheme prior to the enactment of § 691. Moreover, it would allow a decedent's successor to alter the decedent's accounting system to permit the most advantageous tax treatment for the final return in contravention of the provisions of the Code which state that a taxpayer must, unless otherwise authorized by the Commissioner, adhere to a consistent accounting method.[28] The consistent use of a meth-

---

23. 42 T.C. at 110.

24. 45 T.C. at 496.

25. 26 U.S.C. § 446(e) provides:
    "Except as otherwise expressly provided in this chapter, a taxpayer who changes in the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate."

26. *Cf.* Biewer v. Commissioner of Internal Revenue, 341 F.2d 394, 398 (6 Cir. 1965).

27. Poorbaugh v. United States, No. 67–772 (W.D.Pa. November 19, 1968). In order to ensure a consistent treatment of taxable items, the Commissioner is given a wide discretion to deny changes. *See, e. g.,* Commissioner of Internal Revenue v. O. Liquidating Corp., 292 F.2d 225, 231 (3 Cir. 1961) ; Hackensack Water Co. v. United States, 352 F.2d 807, 173 Ct.Cl. 606 (1965).

28. 26 U.S.C. § 446(a) provides:
    "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books."

od of accounting is fundamental to the tax system.[29]

The appellee also asserts that if these accounts are not accrued the effect is to disallow them altogether. The fact is, however, that they are passed on to the decedent's successor as they may be reflected in that period. Thus the $127,-000 of accounts payable passing to appellee will more than offset the $36,800 accounts receivable, also passed to her. Yet it is probably an accurate surmise that with the Government's allocation to the appellee, as decedent's successor, of the accounts received and paid after July 9, 1962, the tax advantage will be substantially less than if the accounts were included in the last return of the decedent ending July 9, 1962. In this situation the District Court, in effect, changed decedent's method of accounting from a cash to an accrual basis. Authority for permission to make such a change was vested by law only in the Commissioner [30] and it was, in fact, denied by him. That decedent's choice of an accounting method was unfortunate cannot serve as a basis for judicial sanction to its change, where a conflict would be generated with the precise law and regulations to the contrary. It would appear that nothing less than legislative fiat, if anything, can ameliorate the plight of one in appellee's situation.

Since the accounts received and paid after July 9, 1962, are not includible in the decedent's return, the judgment of the United States District Court for the Western District of Pennsylvania of November 19, 1968 will be reversed. Accordingly, the case will be remanded for the entry of judgment in favor of the appellant, United States of America, in conformity with this opinion.

29. The consistent use of an accounting procedure is necessary in order to prevent burdensome adjustments for prior years and to prevent a taxpayer from changing the treatment of certain items from year to year in order to avoid tax liability. See Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282 (1938) holding that where a taxpayer elects a system of accounting he must adhere to that system regardless of whether another system would be more advantageous. Cf. Mamula v. Commissioner of Internal Revenue, 346 F.2d 1016 (9 Cir. 1965); Freeman v. Commissioner of Internal Revenue, 303 F.2d 580 (8 Cir. 1962).

30. 26 U.S.C. § 446(e), footnote 25, *supra*.