WILLIAM H. READING AND BEVERLY S. READING, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2178–77.     Filed August 21, 1978.

William H. Reading, pro se.
David W. Otto, for the respondent.

### OPINION

BRUCE, Judge: Respondent determined a deficiency in the Federal income tax of petitioners for 1975 in the amount of $2,486.45. The issues for decision are whether section 262 and sections 1401 and 1402 are constitutional.[1]

This case was submitted fully stipulated. The stipulation of facts with attached exhibits is incorporated herein by this reference. The pertinent facts are summarized below.

Petitioners William H. and Beverly S. Reading are husband and wife. They filed a joint Federal income tax return for 1975 with the Director, Internal Revenue Service Center, Memphis, Tenn. At the time their petition was filed in this case, petitioners resided in O'Fallon, Mo.

During 1975 petitioner William Reading (hereinafter referred to as petitioner) was self-employed as an engineer and consultant. In connection with his business, petitioner incurred and paid expenses which he reported on a Schedule C attached to petitioners' joint return for the taxable year 1975. Included as business deductions on the Schedule C were the cost of operating petitioner's car, 50 percent of the cost of insuring two cars, and 50 percent of petitioners' housing expenses. Petitioner maintained an office in his home during 1975 and the amount claimed on the Schedule C as rent ($3,069.39) consists of half of the

---

[1]Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

annual costs of rent and water, sewer, electric, and telephone services for the house.

On Schedule A to their joint 1975 tax return, petitioners claimed the following items as miscellaneous deductions in lieu of the four personal dependency exemptions to which they were entitled:

| | |
|---|---:|
| Housing | $3,069.39 |
| Food | 3,869.56 |
| School | 343.15 |
| Repairs to family | 559.28 |
| Personal upkeep | 3,111.53 |
| Total | 10,952.91 |

The $3,069.39 claimed as a miscellaneous deduction for "Housing" consists of the half of the costs paid by petitioners in 1975 for rent and water, sewer, electric, and telephone services for their house that was not deducted in Schedule C to their joint return.

The $3,869.56 claimed as a deduction for "Food" is the amount paid by petitioners for food for themselves and their two minor children.

The $343.15 claimed as a deduction for "School" is the cost of tuition and books for petitioners' two minor children at a private school.

The $559.28 claimed as a deduction for "Repairs to family" is the difference between petitioners' total medical and dental expenses for the year ($1,018.90) and the amount allowable as a medical expense deduction under section 213 ($459.62). The latter amount was computed and claimed as a deduction on the appropriate portion of the Schedule A.

The final miscellaneous deduction claimed, $3,111.53 [sic] for "Personal upkeep," is the sum of amounts paid or incurred by petitioners in 1975 for the following items:

| | |
|---|---:|
| Clothing and household expenses | $1,814.59 |
| Auto repairs | 239.50 |
| Auto insurance | 127.00 |
| Small purchases of household furniture | 360.75 |
| Gasoline | 568.69 |
| Total | 3,110.53 |

The $127 item listed above for "Auto insurance" is the portion of

petitioners' auto insurance premium attributable to their nonbusiness car.

Respondent disallowed the miscellaneous deductions claimed by petitioners in the amount of $10,952.91 as being personal, living, or family expenses not expressly deductible under the 1954 Code, and hence expressly nondeductible under section 262.[2] He also determined that petitioners owed self-employment tax on petitioner's self-employment income of $13,837.63, as reported on the Schedule C. Respondent does not dispute petitioners' entitlement to the business expense deductions claimed on the Schedule C.

Petitioners do not argue that the various expenditures at issue in this case are without the scope of section 262 or that respondent has improperly calculated the amount of self-employment tax in accordance with sections 1401 and 1402. Rather, their principal argument is that Congress, by denying deductions for personal, living, and family expenses in the computation of taxable income, has exceeded its authority under the Sixteenth Amendment to the Constitution to lay and collect taxes on "incomes."[3] The cornerstone of petitioners' argument is the definition of income stated by the Supreme Court in *Eisner v. Macomber*, 252 U.S. 189, 207 (1920), as "the gain derived from capital, from labor, or from both combined." They argue that the "gain" from labor cannot be determined until the "cost of doing labor," i.e., their expenditures at issue, has been subtracted from the amount received from the sale of labor. Petitioners attempt to support their method of arriving at the figure reflecting "income" which may constitutionally be taxed by analogizing the "living expenses" of one who depends upon the sale of his services for his livelihood to the "cost of goods sold" concept in certain business contexts. See *Sullenger v. Commissioner*, 11 T.C. 1076 (1948); *Anderson Oldsmobile, Inc. v. Hofferbert*, 102 F. Supp. 902 (D.C. Md. 1952), affd. 197 F.2d 504 (4th Cir. 1952). Appeal is made to history and philosophy and to analysis of legal, social, and economic concepts, none of which leads, however, to the result they seek.

---

[2]The parties agree that the amount listed for gasoline under the "Personal upkeep" heading includes $78 of State gasoline taxes, which $78 was not otherwise claimed as a deduction on petitioners' 1975 return and is deductible as a tax expense under sec. 164.

[3]A discussion of exactly what the Sixteenth Amendment did with respect to the power of Congress to tax incomes is not necessary here. But, see generally *Conner v. United States*, 303 F. Supp. 1187, 1189 (S.D. Tex. 1969), affd. in part, revd. in part, and remanded 439 F.2d 974 (5th Cir. 1971).

It is difficult, if not impossible, to respond to arguments such as petitioners have put forth without becoming embroiled in a game of semantics. The logical force requiring rejection of their arguments—apart from their assertions of personal political philosophy which do not provide a basis for us, a Court sitting to interpret the law, to decide the questions dispositive of this case—is essentially a matter of the definition of terms. Thus, should we hold that "gain" is an essential element of income, compare *Conner v. United States*, 303 F. Supp. 1187 (S.D. Tex. 1969), affd., revd., and remanded 439 F.2d 934 (5th Cir. 1971), with *McGuire v. United States*, an unreported case (N.D. Cal. 1970, 25 AFTR2d 1127, 70-1 USTC par. 9384), we would still face the problem of defining what constitutes "gain." Compare *Conner v. United States, supra*, with *McCabe v. Commissioner*, 54 T.C. 1745, 1748 (1970). It is in situations like this that one can truly admire the wisdom of Mr. Justice Holmes, in particular, as he expressed in *United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931), "We see nothing to be gained by the discussion of judicial definitions."[4]

Nevertheless, accepting the conclusion that some kind of "gain" must be realized for there to be income, the flaw in petitioners' analogy of what they call the "cost of doing labor" to the "cost of goods sold" concept—essentially its failure to acknowledge the difference between people and property—may be shown. The "cost of goods sold" concept embraces expenditures necessary to acquire, construct or extract a physical product which is to be sold; the seller can have no gain until he recovers the economic investment that he has made directly in the actual item sold. See *Estate of Johnson v. Commissioner*, 42 T.C. 441, 444-445 (1964), affd. per order 355 F.2d 931 (6th Cir. 1965), and cases cited thereat. Labor, on the other hand, is, in the current context, behavior performed by human beings in exchange for compensation. One's living expenses simply cannot be his "cost" directly in the very item sold, i.e., his labor, no matter how much money he spends to satisfy his human needs and those of his family. Of course we recognize the necessity for expenditures for such items as food, shelter, clothing, and proper

---

[4]That petitioners place too much reliance upon the words used to define income in *Eisner v. Macomber*, 252 U.S. 189, 207 (1920), is aptly demonstrated by *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955), where, at page 431, the Court rejected those words as "a touchstone to all future gross income questions."

health maintenance. They provide both the mental and physical nourishment essential to maintain the *body* at a level of effectiveness that will permit its labor to be productive. We do not even deny that a certain similarity exists between the "cost of doing labor" and the "cost of goods sold" concept. But the sale of one's labor is not the same creature as the sale of property, and whether the distinction comports with petitioners' philosophical rationalization for their argument, it is recognized for Federal income tax purposes. See *Hahn v. Commissioner*, 30 T.C. 195 (1958), affd. per curiam 271 F.2d 739 (5th Cir. 1959). One's gain, ergo his "income," from the sale of his labor is the entire amount received therefor without any reduction for what he spends to satisfy his human needs.

Without constitutional backing for their position concerning the definition of income, petitioners are left with a bald assertion that section 262 is unconstitutional. However, it has long been established that "Congress has power to condition, limit, or deny deductions from gross income in order to arrive at the net that it chooses to tax." *Helvering v. Independent Life Ins. Co.*, 292 U.S. 371, 381 (1934). And, as the Supreme Court has also stated:

> For income tax purposes Congress has seen fit to regard an individual as having two personalities: "one is [as] a seeker after profit who can deduct the expenses incurred in that search; the other is [as] a creature satisfying his needs as a human and those of his family but who cannot deduct such consumption and related expenditures." [Fn. ref. omitted.]

*United States v. Gilmore*, 372 U.S. 39, 44 (1963). This Court has no power to enlarge the deductions for personal exemptions authorized by section 151 to comport with petitioners' actual living expenses. *Crowe v. Commissioner*, 396 F.2d 766 (8th Cir. 1968).

Petitioners' position with respect to sections 1401 and 1402 requires only brief additional comment. The self-employment tax does not fail the constitutional test of uniformity for indirect taxes due to its many exemptions, because that requirement is geographical, not intrinsic. *Steward Mach. Co. v. Davis*, 301 U.S. 548 (1937); *Helvering v. Davis*, 301 U.S. 619 (1937). It requires but that "the rule of liability shall be the same in all parts of the United States." *Florida v. Mellon*, 273 U.S. 12, 17 (1927). The power of Congress to impose a self-employment tax has previously been recognized (see *Cain v. United States*, 211 F.2d

375 (5th Cir. 1954), cert. denied 347 U.S. 1013 (1954); *Palmer v. Commissioner*, 52 T.C. 310 (1969)), and petitioners' other vague assertions fail to elucidate any reason for finding constitutional infirmity with sections 1401 and 1402. See *Struthers v. United States*, 442 F. Supp. 562 (D. Minn. 1977).

In order that respondent's concession may be given effect,

*Decision will be entered under Rule 155.*