HINTON R. JOHNSON, JR. AND DORIS L. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 5213-79.
United States Tax Court
T.C. Memo 1986-488; 1986 Tax Ct. Memo LEXIS 116; 52 T.C.M. (CCH) 694; T.C.M. (RIA) 86488; September 29, 1986. *116 Held: Petitioner Hinton R. Johnson is not precluded from litigating in this deficiency proceeding his so-called "short-sale" theory for 1976 by a judgment convicting him of violating sec. 7206(1), I.R.C. 1954, for that year. Held further: Petitioners, who reported their income under the cash receipts and disbursements method of accounting, have not shown that they are entitled to defer to a later year the reporting of their 1976 receipts from the sale of corn delivered to them for storage even though they did not pay for the corn in 1976. Held further: Respondent's request for an award of damages under sec. 6673, I.R.C. 1954, is denied. Frank B. Metcalf, for the petitioners. Francis C. Mucciolo, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax under section 6653(b): [1]
Addition to Tax
Year
Deficiency
Sec. 6653(b), I.R.C. 1954
1975
$38,732.84
$19,366.42
1976
$92,622.98
$46,311.49
*118 The parties have agreed that stipulated amounts of -- taxable income, income tax, employment tax, credits, and additions to the tax under the provisions of I.R.C. section 6653(b), set forth therein, are correct subject to petitioners being able to introduce evidence showing that the income accounted for therein is properly reportable in subsequent years by virtue of "short" sales of grain during the years 1975 and 1976. In their opening statement, petitioners conceded the deficiency and addition to tax for 1975. Three issues are presented for decision: 1. Whether petitioners are precluded by the conviction of petitioner Hinton R. Johnson under section 7206(1) from litigating the issue of whether petitioners' "short-sale" theory applies to defer to later years the inclusion in their gross income gains derived from sales of "stored" corn in 1976; 2. Alternatively, whether petitioners, who reported their income from the sale of corn in 1976 under the cash receipts and disbursements method of accounting, may defer to later years the *119 reporting of the gains received from the sale of corn delivered to them for storage on the theory that they made short sales of such corn; and 3. Whether the Court should award damages to the United States under section 6673. FINDINGS OF FACT At the time the petition was filed, petitioners were legal residents of Live Oak, Florida. Petitioners filed their income tax returns for 1975, 1976, and 1977 using the cash receipts and disbursements method of accounting. For the sake of convenience, Hinton R. Johnson will sometimes be referred to herein as Mr. Johnson or petitioner. During 1975, 1976, and part of 1977, petitioners as sole proprietors operated a grain business near Mayo, Florida. The business included the purchase, sale, and storage of corn produced by area farmers. As to stored corn, petitioners sold the corn immediately after it was delivered to them, and their customers were aware that petitioners followed this practice. A farmer had the right at any time to request and receive the same number of bushels of corn as he had "stored" (less a storage fee) or receive payment for the corn at the price current at the time of the demand. According to petitioners' records, *120 at the end of 1975, they owed 2,845.20 bushels of corn to their customers and at the end of 1976 they owed 27,170.16 bushels. The price of corn on December 31, 1976 was $3.08 per bushel. Petitioners kept no records showing the price of stored corn at the time it was delivered to them by a particular farmer, the price when a particular farmer's storage corn was returned to that farmer, or the price the farmer was paid for his corn. Petitioners' 1976 tax return was prepared by Barbara Touchton (Touchton), an employee of H & R Block, using the cash receipts and disbursements method of accounting. For the gross receipts figure on Schedule C of the return, Touchton used the figures reported on petitioners' State sales tax returns. In those figures, petitioners included the sales of stored grain. Petitioners did not include in the gross sales figure on their 1976 return any income from any prior years' sale of stored corn for which the farmers who stored the corn were paid in 1976. To compute cost of goods sold and other expenses, petitioners gave Touchton all of petitioners' canceled checks written in 1976. If a farmer stored corn with petitioners in an earlier year and claimed payment *121 for it in 1976, the payment made to that farmer in 1976 was deducted as a cost of goods sold for that year. Touchton had prepared petitioners' returns for several years before 1976 and was familiar with their business operations. Before 1974, petitioners had maintained an inventory account and had used the opening and closing balances in that account in computing gross income. In 1974, some of petitioners' grain bins collapsed and petitioners decided that they would no longer keep substantial amounts of grain on hand but would broker most of the grain delivered to them. In preparing the 1974 return, Touchton decided to close out the inventory account and compute petitioners' income by using what she understood to be a straight cash receipts and disbursements method. She wrote on the 1974 return: "No longer maintain an inventory. Strictly buy and sell corn to others. Grain broker. No retail sales to general public." Had she given effect to the full amount of the 1974 inventory reduction in that year, her figures would have shown "something like a $60,000 net operating loss which * * * [she thought] was not feasible." To keep the cost of goods sold in line with the gross receipts *122 she held back some of the 1974 checks covering grain purchases and deducted them for 1975. The record does not show that Touchton made any similar adjustment of cost of good sold for 1976, the year here in controversy. When she prepared petitioners' 1976 return, she did not know what a short sale was and did not consider the short-sale concept in preparing the return. On their 1977 income tax return, petitioners reported no income from their grain sales business. Petitioners incorporated the business in late February or early March of that year as The Farmers Exchange, Inc. The corporation's return for 1977, prepared by use of the cash receipts and disbursements accounting method, did not include as income any of the proceeds of sales of corn made before March 1, 1977. Schedule C for their grain business, attached to petitioners' return for 1976, shows gross receipts of $1,415,881, cost of goods sold of $1,363,036, and gross profit from grain sales of $52,845. Based on an analysis of bank deposits, respondent determined that petitioners omitted $255,496 of their gross receipts. Respondent also made adjustments to other items. The parties have stipulated (subject to the Court's *123 ruling on the short-sale theory) that petitioners underreported their income for 1976 from the sale of corn by $236,431. Both petitioners were indicted in the United States District Court for the Middle District of Florida on the charge of willfully and knowingly attempting to evade income tax due for 1976 in violation of section 7201. They were also charged with willfully and knowingly making and subscribing individual income tax returns for 1976 and 1977 in violation of section 7206(1). Under this latter section, they were charged with having received substantial gross receipts from the operation of their grain business in 1976 and 1977 which they willfully and knowingly failed to disclose on their income tax returns for those years. In the criminal proceeding, the district court granted a motion in limine and ruled that petitioners were "precluded from addressing the short sales issue as a matter of law," but were permitted to show, as part of the defense that their understatement of gross receipts was not willful, that they "relied upon and intended to use the short sales concept to report * * * [their] income at a later time." On January 19, 1984, a jury returned a verdict *124 of not guilty as to both petitioners with respect to the court alleging a violation under section 7201 and guilty as to both petitioners on both of the other counts under section 7206(1). The district court set aside the verdict as to Mrs. Johnson on the ground that there was insufficient evidence to support it. The district court entered a judgment of conviction as to Mr. Johnson and imposed sentence. Mr. Johnson appealed to the Court of Appeals for the 11th Circuit and the Government appealed the judgment acquitting Mrs. Johnson. On December 27, 1984, the court of appeals affirmed the district court's judgment of conviction of Mr. Johnson and judgment of acquittal of Mrs. Johnson. OPINION 1. Collateral Estoppel
Respondent contends that Mr. Johnson is collaterally estopped by his conviction under section 7206(1) from litigating the short-sale theory. [2]The doctrine of collateral estoppel applies to prevent a party from relitigating an issue he has lost in a prior action when: (1) the party to be estopped was a party or in privity with a party to the prior action; (2) the issue *125 is identical to the one involved in the prior action; (3) the issue was actually tried in the prior action; and (4) the determination in the prior action was essential to the judgment in that action. Commissioner v. Sunnen,333 U.S. 591, 601 (1948); Deweese v. Town of Palm Beach,688 F.2d 731, 733 (11th Cir. 1982). Petitioner was indicted and convicted in the district court on a charge of failing "to disclose * * * substantial gross receipts from the operation of * * * [his] business" in violation of section 7206(1). [3] That section makes it a criminal offense for a taxpayer to willfully subscribe to a return, under the penalties of perjury, which "he does not believe to be true and correct as to every material matter." *126 One of petitioner's defenses to the criminal charge was that he did not understate his gross receipts because his gross receipts from the sales of "stored" grain were derived from short sales and his gains from those sales were not reportable as income until the short-sale transactions were closed. The district court admitted the short-sale evidence on the issue of petitioner's willfulness but ruled that the short-sale theory was inapplicable as a matter of law on the issue of whether the return in fact failed to disclose all of petitioners' income. Petitioner appealed. In an unpublished opinion (United States v. Johnson, No. 84-3089, Dec. 27, 1984), the Court of Appeals for the Eleventh Circuit, affirming the judgment of conviction, rejected petitioner's argument that the evidence on the short-sale theory was admissible to show that petitioners' return did not substantially understate their gross receipts, stating: Under the "short-sale" approach, receipts from the sale of "stored" corn would not be reportable as gross income until the tax year in which the farmer who "stored" *127 the corn with Johnson elected to be repaid either in corn or at the prevailing market price for the corn. There are two answers to Johnson's argument. First, even if applied to the 1976 transactions, the result would reduce by only $65,434 the otherwise proven underreported income of $224,803. * * * Second, Johnson kept no records to distinguish the proceeds of selling "stored" corn from the proceeds of corn bought and resold outright, and did not show on his tax returns a short-sale method of doing business. Thus, there is no indication that Johnson intended to use a short-sale theory in preparation of his return. The first "answer" given by the court of appeals thus assumed the correctness of the short-sale theory but concluded that it would provide no defense because, even so, there would still be a proven "material" understatement of gross receipts within the meaning of section 7206(1). The second answer given by the court of appeals rejected petitioner's short-sale defense because he kept no records and his return contained nothing distinguishing sales of stored corn from sales of corn bought and sold. As we interpret the opinion, the court reasoned that, in determining *128 what petitioner believed as to the accuracy and truthfulness of his return, within the meaning of section 7206(1), there was "no indication" that in subscribing to his return he "intended" to use the short-sale theory. The court of appeals did not hold that petitioner's short-sale theory did not have legal or factual merit for purposes of determining whether petitioner owed additional taxes for 1976 because tax liability is irrelevant to an offense under section 7206(1). The purpose of that section "is to impose penalties for perjury upon those who willfully falsify their returns regardless of the tax consequences of the falsehood." United States v. Beasley,519 F.2d 233, 245 (5th Cir. 1975); United States v. DiVarco,484 F.2d 670, 673-674 (7th Cir. 1973). The issue before this Court is not the same issue as the one decided in the criminal case and, therefore, collateral estoppel does not apply. Here, the issue is whether respondent erred in the determination of the 1976 deficiency. That issue does not turn on the contents of petitioner's tax return *129 or even his belief as to its accuracy or truthfulness. Nor does it turn on whether petitioner intended to apply the short-sale theory in filing that return. Even if his tax return contains material errors which were willfully made, and even if he did not intend to use the short-sale theory in preparing his return, [4] collateral estoppel does not preclude Johnson from showing in this proceeding, if he can, that the determined deficiency is erroneous by introducing any admissible evidence on his alleged short-sale transactions. Wright v. Commissioner,84 T.C. 636, 640-644 (1985); see also Considine v. United States,683 F.2d 1285, 1287 (9th Cir. 1982). 2. The Short Sale Theory
Petitioners contend that their 1976 sales of stored corn should be treated as "short *130 sales." Under this theory, petitioners would not be required to report their receipts from a sale until the tax year in which they closed the transaction by paying for the corn or returning corn to a farmer; otherwise, they argue, their gain on individual transactions cannot be determined and they would be taxed on gross receipts. Respondent contends that petitioners are taxable on the full amount received from sales of stored as well as purchased corn in 1976 because (1) the payments for the sale of stored corn were received by petitioners without restrictions as to their use and are, therefore, includable in petitioners' income for the year in which the payments were received; and (2) petitioners did not, in any event, maintain or reconstruct the records required to establish the applicability of their short-sale theory. To adopt petitioners' position, respondent also argues, would require a change in petitioners' accounting method and they have not obtained the Commissioner's approval of such a change. We agree with respondent. The law is established that, as a general rule, payments *131 received for the sale of goods or services without restrictions as to their use are includable in a taxpayer's income for the year in which the payments are received. Hagen Advertising Displays, Inc. v. Commissioner,47 T.C. 139, 146-147 (1966), affd. 407 F.2d 1105 (6th Cir. 1969); S. Garber, Inc. v. Commissioner,51 T.C. 733, 736 (1969); Farrara v. Commissioner,44 T.C. 189, 191-192 (1965); see also Schlude v. Commissioner,372 U.S. 128 (1963); American Automobile Association v. United States,367 U.S. 687 (1961); Automobile Club of New York, Inc. v. Commissioner,32 T.C. 906, 912-913 (1959), affd. 304 F.2d 781 (2d Cir. 1962). The fact that, under this rule, part of the cost of the corn petitioners sold was not paid and would not be deducted in computing cost of goods sold until a later year does not mean that they are being taxed on gross receipts; the cost of such goods would be subtracted from gross receipts in the year in which the farmer asked for payment or a return of his stored corn. The law does not require a matching of a particular sale *132 with a particular purchase because the tax laws are based on annual rather than transactional accounting. S. Garber, Inc. v. Commissioner,51 T.C. at 737; Hagen Advertising Displays, Inc. v. Commissioner,47 T.C. at 147. Petitioners' reliance on Magnolia Farmers Elevator Co. v. Commissioner,6 B.T.A. 552 (1927) and 19 B.T.A. 390 (1930), is misplaced because, among other reasons, petitioner did not maintain the records required under those decisions. In those cases, the taxpayer sold stored corn and kept a record of the price at which each sale was made. The taxpayer included in its summary of income the total proceeds, $11,886.10, of the sale of corn which the farmers had not yet authorized it to sell. 19 B.T.A. at 393. In the same summary, the taxpayer deducted the $11,886.10, the actual amount of the sales proceeds not paid to the farmers, on the ground that it was an offsetting liability to the farmers. 19 B.T.A. at 394. The tax return for the succeeding year would reflect the taxpayer's gain or loss on each such transaction. In the instant case, petitioners for 1976 kept a record *133 only of the number of bushels of corn that each farmer had in storage. Petitioners did not keep a record of the price for which the stored corn was sold or the price eventually paid to the farmer for such corn. The amount of the "offsetting liability" claimed by petitioners was not, as in the Magnolia Farmers Elevator Co. cases, the total amount petitioners actually paid for the stored corn but was a sum arrived at by multiplying the number of bushels of stored corn on hand at the end of the year by the price of corn at that time. Petitioners' 1976 method thus lumps the proceeds of all corn sales and provides no information on either the amount of the proceeds from, or the cost of, the stored corn that was sold. That method provides only estimates of income from sales of stored corn because it makes no adjustments for fluctuations in the price of corn, which may be very great in a given year. There is no way of assuring that petitioners' 1976 method clearly reflects income. True, the regulations provide that "For income tax purposes a short sale is not deemed to be consummated until *134 delivery of the property to close the short sale." Sec. 1.1233-1(a)(1), Income Tax Regs.[5] But that regulation presupposes records documenting the results of short sales; petitioners have not produced such records. Because petitioners did not keep the kind of records on which the Magnolia Farmers Elevator Co. opinions were based, those opinions are distinguishable. We add that those opinions have never been cited in any previously reported case, and we express no views on their continued viability in the light of such subsequently decided cases as Schlude v. Commissioner,372 U.S. 128 (1963); American Automobile Association v. United States,367 U.S. 687 (1961). Furthermore, the record here shows that petitioners did not use the so-called short-sale method before or after 1976. In fact, according to their counsel, petitioners conceded the determined deficiency for 1975 because they did not have the records required to substantiate the method for that year. For 1977, petitioners *135 did not report any gain or loss from the sales of corn stored in 1976, either as individuals or through the corporation that succeeded to the business. In petitioners' business, the income derived from sales of stored corn was a material factor in determining their income. Sec. 1.446-1(a), Income Tax Regs. Deferring their receipts from sales of stored corn in the manner here advocated for 1976 would constitute a change in accounting method for which they failed to obtain the Commissioner's approval. Sec. 446(e); sec. 1.446-1(e), Income Tax Regs.
Petitioners argue that a "short sale is an economic transaction" and not a method of accounting. But how petitioners account for the income derived from their transactions from year to year is a method of accounting. "The consistent use of a method of accounting is fundamental to the tax system." Poorbaugh v. United States,423 F.2d 157, 163-164 (3d Cir. 1970). 3. Damages under Section 6673
*136 Section 6673[6] provides that when it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, the Court may award damages to the United States in an amount not in excess of $5,000. Respondent contends that, because the district court and the court of appeals ruled against Mr. Johnson on his short-sale theory, damages should be awarded to the United States on the theory that petitioners' position in this case was frivolous or groundless. We do not agree. *137 In rejecting respondent's collateral estoppel argument, we have explained in some detail that the issue in the criminal case was different from the one here presented. In the criminal case, the issue was whether Mr. Johnson committed perjury when he signed the 1976 joint return. One of his defenses was that he intended to use the short-sale theory in preparing his return. The district court and the court of appeals held as a matter of law that the trial record showed that he did not. Here, the deficiency issue, as we have explained, does not turn on what petitioner's return showed or what he intended when he filed it but on the evidence presented in this Court disclosing the true facts. Although we have held the petitioners have not shown that the determined deficiency, as adjusted by the stipulation, was erroneous, petitioners were entitled to, and were permitted to, offer such admissible evidence as they had available to sustain their position. Petitioners' short-sale theory is no more "groundless" or "frivolous" than respondent's collateral estoppel argument when viewed in the light of the teachings of Wright v. Commissioner,84 T.C. 636 (1985). Section *138 6673 is no doubt intended, as respondent argues, to assist the Court in regulating its docket by deterring frivolous filings. It is not intended, however, to be used as a bludgeon to force settlements or a threat against the good faith advocacy of potentially meritorious legal and factual positions. There is a difference between a frivolous proceeding and one ultimately found to be without merit. As explained by the Supreme Court in Christiansburg Garment Co. v. EEOC,434 U.S. 412, 421 (1978), dealing with a statute which allowed prevailing defendants attorney's fees in order to deter frivolous suits, a trial court should -- resist the understandable temptation to engage in posthoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. * * * [N]o matter how meritorious one's claim may appear at the outset, the course of litigation *139 is rarely predictable. Decisive facts may not emerge until discovery or trial. * * * The courts should always "remain open to all who seek in good faith to invoke the protection of law." Crain v. Commissioner,737 F.2d 1417, 1418 (5th Cir. 1984), affg. per curiam a Memorandum Opinion of this Court. Respondent's motion for damages will be denied. To reflect the foregoing, An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Petitioners do not contend that, even if Mr. Johnson is collaterally estopped, Mrs. Johnson, who was acquitted of all charges is not so estopped. Instead, they have stipulated that if he is so estopped, the determined deficiencies and additions to tax (as modified by the stipulation) are to be sustained.↩
3. SEC. 7206. FRAUD AND FALSE STATEMENTS. Any person who -- (1) Declaration under penalties of perjury. -- Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *↩
4. The court of appeals stated that expert testimony on the short-sale theory was admitted to negate the element of willfulness under sec. 7206(1)↩. Again, willfulness is not an issue in this deficiency proceeding; therefore, the affirmed jury verdict implicitly rejecting the short-sale theory as evidence of lack of willfulness provides no basis for applying collateral estoppel.
5. We need not decide, in response to one of respondent's arguments, whether this regulation applies to commodities such as corn.↩
6. SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC. Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩