CLARENCE W. MARTIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket No. 29020-82.
United States Tax Court
T.C. Memo 1985-57; 1985 Tax Ct. Memo LEXIS 574; 49 T.C.M. (CCH) 695; T.C.M. (RIA) 85057; February 7, 1985. Scott McLarty, for the petitioner. John F. Driscoll, for the respondent. SCOTT *2 MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency of $11,525.62 in the 1980 Federal income tax of petitioner, Clarence W. Martin, and an addition to tax under section 6653(b) [1] of $5,762.81. The parties have agreed that the deficiency in petitioner's 1980 income tax is $9,151, leaving for decision only whether petitioner is liable for the addition to tax *575 for fraud under section 6653(b) on this agreed deficiency. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Bartow, Florida, at the time of the filing of the petition in this case. Petitioner, in 1980, earned wages from employment as a pipefitter. On May 11, 1981, petitioner filed a Form 1040A for the calendar year 1980 with the Office of the Director, Internal Revenue Service Center, Chamblee, Georgia. On this form he reported that his income from wages, salaries, tips, etc., was zero. A 1980 W-2 wage and tax statement and a "Request for Corrected Form W-2 Wage and Tax Statement" were attached to the Form 1040A. *697 The Form W-2 attached to petitioner's Form 1040A had been sent to petitioner by his employer, the Mulberry Construction Co., and listed wages, tips and other compensation in the amount of $34,123.38. In capital letters written across the face of this Form W-2 was the word "INCORRECT." The "Request for Corrected Form W-2 Wage and Tax Statement," which petitioner attached to his 1980 Form 1040A had been sent by petitioner to his employer, Mulberry Construction Co., on April 28, 1981. It stated *576 the following: The amounts shown on form W-2 for tax year 1980 do not properly reflect the amounts includible in gross income of C. Martin for Federal Income Tax purposes. The amounts shown in box 10 of Form W-2 should be corrected to comply with Sections 71 thru 84 of the Internal Revenue Code. The amounts shown in box 13 of form W-2 should be corrected to reflect the proper amount of FICA wages paid, that is, the amount of FICA wages includible in gross income. Note: Upon correction of the amount of FICA wages paid, the amount of FICA tax erroneously withheld should be refunded to C. Martin. If the corrections requested are unavailable or unobtainable, please notify C. Martin immediately with a statement of the circumstances and reasons for non-compliance with the above request. If the requested corrections are not furnished within 10 days of receipt of this notice C. Martin will file appropriate tax returns with a copy of this notice attached. On the 1980 Form 1040A filed by petitioner, he claimed a refund of Federal income tax that had been withheld in the amount of $5,361.88. *4 Petitioner submitted Forms W-4 (Employees' Withholding Allowance Certificate) *577 dated August 25, 1980, and November 14, 1980, to his employer, Mulberry Construction Co., claiming exemption from withholding and certifying that he incurred no liability for Federal income tax for 1979 and that he anticipated that he would incur no liability for Federal income tax for 1980. The form contained the following statement which petitioner signed: "Under the penalties of perjury, I certify that * * * I am entitled to claim the exempt status." For years prior to 1980, petitioner filed Federal income tax returns in which he reported as taxable income the wages he received as a pipefitter. In April 1981, petitioner filed Forms 1040X (Amended U.S. Individual Income Tax Return) for taxable years 1977, 1978, and 1979 and claimed refunds of all taxes withheld and all taxes previously paid for those years. On December 3, 1981, petitioner sent to the Internal Revenue Service Center notarized affidavits in which he claimed a refund of taxes paid in 1978, 1979 and 1980 and swore that the "amounts * * * shown on Employers' Forms W-2 for tax year[s 1978, 1979, and] 1980 do not reflect the correct amount includible in gross income." *5 For tax year 1981, petitioner filed *578 a Form 1040 which followed the same format as the Form 1040A he filed for 1980. Petitioner failed to report wage income received by him during that year and requested a refund of all tax that had been withheld. On April 26, 1982, petitioner submitted an exempt Form W-4 to his employer. On October 15, 1983, petitioner filed a Form 1040 for tax year 1982 and reported wages, salaries, tips, etc., in the amount of $32,350 and showed a tax liability in the amount of $2,701. During the years 1981 and 1982, petitioner was a member of an organization known as the Keystone Society which subscribed to the theory that "wages are not taxable as income." Prior to learning of the Keystone Society, petitioner had never filed an "exempt" Form W-4. Petitioner first heard of the Keystone Society from another pipefitter at his place of employment. He joined it in 1981 [2] and his *6 1980 tax return was prepared for him by a member of the society. For years prior to 1980, petitioner generally had his return prepared by a tax return preparer. *579 On behalf of an individual, Calvin R. Smith, the Keystone Society engaged a Florida attorney, Lawrence J. Pino, to litigate whether wages are taxable as income in the United States District Court for the Middle District of Florida. The suit was initiated on November 25, 1981. District Court Judge John A. Reed, Jr., of the Middle District of Florida dismissed the lawsuit on December 22, 1982, and the Keystone Society appealed to the United States Court of Appeals for the Eleventh Circuit on January 3, 1983. The Circuit Court affirmed the District Court's dismissal of the suit on August 9, 1983. See Smith v. United States and Commissioner of Internal Revenue, Dkt. No. 81-654-ORL-CIV-R, dismissed (M.D.Fla. Dec. 22, 1982), dismissal affd. per curiam (11th Cir. Aug. 9, 1983). In his statutory notice of deficiency issued to petitioner on September 14, 1982, respondent determined that petitioner had received unreported income in 1980, and that the underpayment of tax for that year was due in part to fraud within the meaning of section 6653(b). *7 OPINION Section 6653(b), provides in part: (b) Fraud. - If any part of any underpayment * * * of tax required to be shown *580 on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment * * *. Petitioner states that in order for respondent to establish that he is liable for the addition to tax for fraud, he must show that some part of the underpayment was due to fraud with intent to evade a tax believed to be due and owing. Petitioner contends that when he filed exempt Forms W-4, he did so pending the outcome of the case in the United States District Court for the Middle District of Florida in which the Keystone Society was litigating the issue whether wages are taxable as income. See Smith v. United States and Commissioner of Internal Revenue, Dkt. No. 81-654-ORL-CIV-R, dismissed (M.D.Fla. Dec. 22, 1982), dismissal affd, per curiam (11th Cir. Aug. 9, 1983). Petitioner points out that after the District Court's dismissal of that suit, he filed an amended 1980 tax return. [3]
*8 Respondent takes the position that petitioner acted fraudulently *581 in submitting protester-type tax returns; in submitting exempt Forms W-4; in filing amended returns claiming refunds of taxes he had previously paid; in failing to cooperate in good faith with respondent's agents during the examination of the case; in submitting Requests for Corrected Forms W-2 Wage and Tax Statements; and in submitting fraudulent affidavits to support his claims for refunds. Respondent points out that the dismissal of Smith,supra, was affirmed by the United States Court of Appeals for the Eleventh Circuit on August 9, 1983, and petitioner continued to assert his tax protester position that wages are not taxable as income after that date. Respondent bears the burden of proving by clear and convincing evidence that some part of the underpayment of tax is due to fraud. Rule 142(b); section 7454(a); Stone v. Commissioner,56 T.C. 213, 220 (1971). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107 (1956). *582 *9 The existence of fraud is a factual question to be determined by an examination of the entire record. Rowlee v. Commissioner,supra at 1123; Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd, without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). In this case, respondent has shown that petitioner in August and November 1980 knowingly submitted false information to his employer when he stated on his W-4 forms that he had incurred no tax liability in 1979 and anticipated none in 1980. These W-4 forms on which petitioner claimed to be exempt from tax for the year 1980 constituted evidence that petitioner had a fraudulent intent to evade taxes on his 1980 income as early as August of 1980, and the manner of filing his 1980 Form 1040A with the attached W-2 marked "INCORRECT" shows a continuation of this fraudulent intent. Filing of false withholding certificates has repeatedly been held by this Court to be evidence of fraud. See Hebrank v. Commissioner,81 T.C. 640, 642 (1983); [4]Rowlee v. Commissioner,supra at 1125-1126; *583 Stephenson v. Commissioner,79 T.C. 995, 1007 (1982); Habersham-Bey v. Commissioner,78 T.C. 304, 313-314 (1982). Petitioner, for years prior to 1980, had filed proper *10 returns reporting his wages as income and must have known or reasonably should have known that he, like all other citizens, was required to pay Federal income tax on the wages he earned. Petitioner relies on Raley v. Commissioner,676 F.2d 980 (3d Cir. 1982), revg. on this issue T.C. Memo. 1980-571. The taxpayer in Raley failed to file individual Federal income tax returns for tax years 1972 through 1976 even though he received wages during that period. For tax years 1973 through 1977, the taxpayer filed false Forms W-4E with his employer and claimed that he had not incurred any Federal income tax liability during the immediately prior year and that he did not anticipate any such liability for the current year. As a result, his employer stopped withholding Federal income taxes from 1973 through 1976. *584 The taxpayer also filed purported amended 1972 and 1973 Federal income tax returns wherein the taxpayer failed to provide sufficient information to compute his income tax liabilities and he failed to sign the purported returns. From 1973 into 1978, the taxpayer notified Federal officials involved in the income tax collection process that he refused to pay his Federal income tax for the years in issue. To meet his burden of proving fraud, respondent relied upon the foregoing facts as well as the taxpayer's actions in refusing to sign his income tax returns under *11 penalty of perjury and his refusal to provide the Internal Revenue Service with any information to aid in computing his proper tax liability. In Raley,supra at 984, the Circuit Court held the taxpayer was not liable for the 50 percent addition to tax for fraud under section 6653(b) because the Government did not present clear and convincing evidence of the taxpayer's intent to defraud. The court stated that "were [the evidence upon which the Government relied to prove fraud] the only evidence before us, we might be inclined to agree with the Government * * *." The court pointed out, however, *585 that the taxpayer in Raley wrote many letters to various Federal officials, in which he went out of his way to inform every person involved in the collection process that he was not going to pay Federal income taxes. The court held that these letters do not support a claim of fraud but call attention to Raley's failure to pay taxes and were considered "sufficient to 'dilute' the Government's case." The Third Circuit concluded that "[i]t would be anomalous to suggest that Raley's numerous attempts to notify the Government are supportive, let alone suggestive, of an intent to defraud." Petitioner argues that he, like the taxpayer in Raley, called attention to his failure to pay taxes by his involvement in the Keystone Society which was litigating the *12 Smith case and his filing of a Form 1040A that clearly stated his position as a member of the Keystone Society. In our view, the facts of Raley are unusual and distinguishable from the instant case. Petitioner's membership in the Keystone Society and the type of tax return he filed for 1980 do not constitute a Raley-like pattern of notification. Hebrank,supra at 643. We are not *586 persuaded by petitioner's argument that he did not have the necessary fraudulent intent when he filed his 1980 tax return due to his membership in the Keystone Society which he argues was litigating whether wages are taxable as income. In the first place, petitioner formed his intent not to pay taxes on his wages well before the filing of the suit in the Smith case. Petitioner filed his first false W-4 in an effort to have no taxes withheld from his wages in August 1980, a year before the institution of the Smith suit and almost a year before the lawyers were approached about filing the suit. The record does not bear out petitioner's claim that he filed an exempt W-4 and attached a W-2, which had written across it "INCORRECT," to his 1980 Form 1040A on which he reported "0" wages, based in any way on the pendency of the Smith suit.That suit was commenced well after both of these actions by petitioner. The record shows that petitioner knew he had a legal duty to report his wages as income. While this record shows that petitioner could not *13 have relied on the pendency of the Smith case for his fraudulent actions, it should be pointed out that variations *587 of the argument raised in that case, that wages are not gross income because they are received as an equal exchange for labor, had already been considered and rejected by this and other courts when petitioner filed his 1980 Form 1040A. Reading v. Commissioner,70 T.C. 730 (1978), affd. per curiam 614 F.2d 159 (8th Cir. 1980). See also Lynch v. Hornby,247 U.S. 339 (1918). Petitioner is an intelligent individual and if he had an honest question in his mind about reporting his wages as income, he would have sought competent advice to determine the legitimacy of the views of the Keystone Society. Petitioner testified that for years prior to the year 1980 he had his returns prepared by a tax return preparer. The fact that petitioner for 1980 had a member of the Keystone Society prepare his return rather than seeking advise from his tax return preparer is a further indication of fraud. On the facts before us, we conclude that petitioner's actions are clear evidence of fraud with intent to evade tax. Based on the agreed upon amount of petitioner's tax liability, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Petitioner first testified at trial that he joined the Keystone Society on March 30, 1981, and later testified that he joined that society in March 1980. The records of the Keystone Society and the testimony of the society's vice president, who was also a member of the interim board of directors, show that petitioner did not become a member until 1981. In fact, the records of the Keystone Society show petitioner becoming a member on August 31, 1981. However, the vice president of the society testified that since recording the payment of dues was often delayed, petitioner may have attended a meeting and indicated his intention of joining prior to that date.↩
3. On March 22, 1984, petitioner filed an amended petition in this case and claimed he filed a non-protester Form 1040X for tax year 1980, but the record does not reflect the existence of such a return.↩
4. Hebrank v. Commissioner,81 T.C. 640↩ (1983), has facts that parallel those of the instant case in most particulars.