ROBERT R. AND DEBORAH L. POYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Poyer v. Commissioner
Docket No. 33971-84.
United States Tax Court
T.C. Memo 1986-126; 1986 Tax Ct. Memo LEXIS 482; 51 T.C.M. (CCH) 735; T.C.M. (RIA) 86126; March 27, 1986. *482 Petitioner, whose principal income in 1982 was from wages, joined the Virginia Patriots in 1983. At the suggestion of a representative of the Virginia Patriots, petitioner filed Forms W-4 claiming 14 exemptions and also filed an amended return for 1982 claiming a deduction for "cost of goods sold" in an amount that completely eliminated his taxable income. He requested and received a refund of the taxes paid for 1982. In his notice of deficiency respondent disallowed the deduction for "cost of goods sold" and determined an addition to tax for fraud. Held: Petitioner failed to prove that he was entitled to the deduction for "cost of goods sold." Held,further: The underpayment of tax shown on petitioner's amended return for 1982 was due to fraud. Robert R. and Deborah L. Poyer, pro se. John C. McDougal, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' 1982 Federal income tax of $3,506.00, an addition to tax pursuant to section 6653(b)(1) [1] *483 of $1,753.00, and an addition to tax in an unspecified amount under section 6653(b)(2). [2]
The issues for our decision are 1) whether petitioners are entitled to a "cost of goods sold" deduction in 1982 representing the value of petitioner's [3] services to his employer, and 2) whether any part of petitioners' underpayment was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners Robert R. and Deborah L. Poyer are husband and wife and resided in Newport News, Virginia at the time they filed their petition in this case. They filed a timely joint Federal income tax return for the taxable year 1982 with the Internal Revenue Service Center in Memphis, Tennessee. On that return, prepared by H&R Block, petitioners reported wages of $29,828.00 from petitioner's employment, excess itemized deductions of $1,893.00 and a tax liability *484 of $1,506.00. The wages earned by petitioner were for services rendered to the Department of the Army, Jarrell's Truck Plaza, and Eastates Petroleum Co., Inc. In July 1983, petitioner attended a meeting of an organization known as the Virginia Patriots. The Virginia Patriots was a self-proclaimed constitutional study group which viewed the actions of the Internal Revenue Service (IRS), as illegal. The Virginia Patriots adopted the theory that wages are not taxable as income but are received in an equal exchange for one's services. Roy Sheffler (Sheffler), a Special Agent for the IRS, was assigned to conduct an undercover investigation of the Virginia Patriots. Sheffler attended four meetings of the Newport News Chapter of the Virginia Patriots in August and September of 1983. He joined the organization under the name of Bill Bryce. At Virginia Patriots' meetings, members were advised on how to file Forms W-4 to prevent any withholding from their paychecks. Members were told at first to write "exempt" on their Forms W-4. When the IRS began disallowing these exempt Forms w-4, members were advised to claim 14 exemptions. This amount of exemptions was chosen because it was viewed *485 as sufficient to prevent all withholding from taxes. Members were also advised on ways to avoid or delay assessment or collection of taxes. In addition, a member could bring copies of their prior years' returns to the meetings and amended returns for open years would be prepared by one of the Virginia Patriots' leaders so that all the Federal income tax paid by a member would be refunded. A legal defense fund was established by the Virginia Patriots to assist members who were audited by the IRS. Members were also advised to place their assets in someone else's name so that they would have no assets to be seized by the IRS, and to not use bank accounts so that the IRS could not reconstruct their income from such accounts. Sheffler visited the residence of James DuBose, Sr. (DuBose), one of the leaders of the Virginia Patriots. Sheffler was referred to DuBose by another member of the Virginia Patriots for assistance in amending his 1982 return. DuBose prepared an amended return, Form 1040X, for Sheffler that indicated that Sheffler had zero tax liability in 1982. DuBose worked through the amended return in reverse order to arrive at an adjustment to income. The adjustment to income *486 utilized by DuBose on Sheffler's return was supported by a Schedule C for a non-existent business. The adjustment was based upon a deduction for the "cost of goods sold." To explain why the return was being amended, DuBose wrote on page 2 of the Form 1040X that "the changes on lines 1, 3, and 5 are the result of business expenses not previously reported." DuBose then told Sheffler to copy the return in his own handwriting before mailing it to the IRS. DuBose prepared two amended returns for Sheffler and told him to mail the returns in separate envelopes, at least a week apart to lessen the possibility that the same person would receive both returns. On July 23, 1983, petitioner joined the Virginia Patriots. He paid a membership fee of $100.00 and later paid an additional fee of $60.00. On July 25, 1983, petitioner filed a Form W-4 with his employer claiming 14 exemptions. Prior to this time, petitioner had claimed two exemptions. The Form W-4 was signed by petitioner under penalty of perjury. Petitioner had attended Virginia Patriots meetings where the filing of false Form W-4s had been discussed. He was advised to claim 14 exemptions by a member of the Virginia Patriots. Petitioner *487 gave a copy of his 1982 return to a Mr. Sugarman, president of the Virginia Patriots, to have an amended return prepared. Shortly thereafter he received the amended return, copied it in his own handwriting, and filed it. The amended return was very similar to the one prepared by DuBose for Sheffler. The return contained a Schedule C with a $19,083.00 "cost of goods sold" deduction. This deduction was sufficient to reduce petitioner's tax liability to zero. On page 2 of the form petitioner also wrote, as DuBose had on Sheffler's return, that the "changes in lines 1, 3, and 5 are the result of business expenses not previously reported." Sample returns bearing petitioner's name, along with other sample amended returns, were seized by the IRS in a search, pursuant to a warrant of the Virginia Patriots' offices. At trial petitioner testified that in 1982 he sold a gas additive called "Mixigo." He purchased "Mixigo" from a distributor for $95.00 a case and sold it for $180.00. He paid his wife $110.00 a week for helping him. He stated that he also incurred travel expenses in selling "Mixigo." He did not include any income or expenses from the sale of "Mixigo" on his 1982 return. The *488 Form 1040X prepared for petitioner by the Virginia Patriots did not reflect any adjustment based upon petitioner's sale of "Mixigo." Petitioner agreed with respondent that any losses he incurred from the sale of "Mixigo" were not sufficient to reduce his tax liability to zero. Based upon the amended return filed by petitioners, the IRS issued a refund to petitioners in the amount of $3,506.00, plus interest. On a subsequent audit of petitioners' returns, respondent disallowed the deduction for "cost of goods sold" claimed on the amended returns, which resulted in the deficiency in tax involved herein. OPINION Petitioners contend that they should be allowed a "cost of goods sold" deduction for the taxable year 19829 They appear to base their claim upon petitioner's sales of a gas additive called "Mixigo." Petitioners also contend, on brief, that petitioner "had no 'income', only compensation for labor, as described by the courts." Petitioners further contend that they are not liable for the addition to tax for fraud because they were merely following IRS procedures in filing a claim for refund, and that the filing of a Form W-4 is not mandatory. Respondent contends that petitioners' *489 "cost of goods sold" deduction should be disallowed because the real basis for their claim for a refund was that wages are not taxable income. In addition, respondent contends that his addition to tax for fraud should be upheld because petitioners falsely and fraudulently concealed the true basis for their claim for refund and then cashed the falsely obtained refund check, and because petitioner filed false and fraudulent Forms W-4. It is clear that petitionrs' compensation in the form of wages, is taxable income. Rowlee v. Commissioner,80 T.C. 1111, 1119-22 (1983); Section 61(a). Petitioners, in seeking a "cost of goods sold" deduction, appear to be arguing that they should be allowed a deduction for the value, or cost, of their labor. According to them, the value of their labor is equal to the wages they earned resulting in their having no profit and a zero tax liability. Petitioner argues that compensation for labor cannot be considered "profit" and hence cannot be taxable income. Taxable income is not limited to "profit" as that term is generally understood. The Sixteenth Amendment to the Constitution authorizes Congress to tax income "from whatever source derived" and section *490 61 of the Code defines gross income as "income from whatever source derived * * * including compensation for services." Arguments such as these have also been rejected by this Court because they fail to recognize that the "cost of goods sold" concept involves property or physical goods, not the cost of maintaining people. United States v. Gilmore,372 U.S. 39, 43 (1963); Reading v. Commissioner,70 T.C. 730, 733 (1978), affd. per curiam 614 F.2d 159 (8th Cir. 1980). Petitioner cannot prevail with this argument. At trial petitioner also argued that he was in the business of selling a gas additive called "Mixigo" and should therefore be allowed a deduction for the expenses he incurred in connection with his sales of "Mixigo." However, petitioner also stated that these expenses were not taken into consideration in preparing his Form 1040X for 1982. Moreover, petitioners have not offered any evidence, except petitioner's own self-serving assertions, that such a business existed, that such expenses were actually incurred, or that the expenses were incurred in 1982, the taxable year at issue. Petitioner has failed to prove that he incurred the expenses he is now claiming as business deductions. *491 Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). An important corollary to this principle is that it is the taxpayer's burden to establish that he is entitled to the deductions claimed. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a).[4] Accordingly, we find that petitioners have failed to carry their burden of proof in regard to the deduction claimed and we therefore sustain respondent's determination. With respect to the fraud issue, respondent has the burden of proving, by clear and convincing evidence, that there was an underpayment of tax and that some part of the underpayment was due to fraud with the intent to evade tax. Section 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of such taxes. Spies v. United States,317 U.S. 492, 499 (1943); United States v. Conforte,624 F.2d 869 (9th Cir. 1980). The existence of fraud is a fact which must be determined on the basis of all facts and circumstances. Estate of Pittard v. Commissioner,69 T.C. 391 (1977). *492 Since direct proof of a taxpayer's fraud is rarely available, circumstantial evidence may be utilized to prove fraud. Rowlee v. Commissioner,supra.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otuski v. Commissioner,53 T.C. 96, 105-106 (1969). In this case there is clear and convincing evidence that petitioners acted with fraudulent intent. In fact, it is clear that petitioner's actions were motivated by a purpose to evade the payment of tax he knew to be owing. As noted previously, shortly after petitioner joined the Virginia Patriots, he filed a false Form W-4 with his employer claiming 14 exemptions. Petitioner had learned at a Virginia Patriots' meeting that this tactic should help one avoid paying taxes. Prior to that time, petitioner had claimed two exemptions. Filing of false Forms W-4 has been held to be indicative of fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner,78 T.C. 304, 313 (1982). Furthermore, on his amended return petitioner claimed a deduction in the amount of $19,083.00 for "cost of goods sold" which, so far as we can determine, *493 was non-existent. [5] *494 The purpose of this claim appears to have been to offset the income from wages reported on petitioner's original return in an effort to fraudulently recover the taxes he had paid with his original return. At the trial petitioner blatantly admitted that he thought the refund he received was great because he had paid it in and was entitled to get it back. Respondent has carried his burden of proof on the fraud issue. Petitioner is also liable for the addition to tax imposed by section 6653(b)(2) computed on the deficiency determined in the notice of deficiency in the amount of $3,506.00. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable year at issue. 2. The amount of the section 6653(b)(2) addition to tax will be determined at the time of assessment.↩
3. All references to petitioner refer to Robert R. Poyer. Deboran L. Poyer is a petitioner in this case only because she filed a joint return with her husband.↩
4. All rules references are to the Tax Court Rules of Practice and Procedure.↩
5. Petitioner's testimony at the trial is hard to rationalize and is further evidence that his principal objective in filing the amended return and the false Forms W-4 was to avoid payment of tax. The filing of the false Forms W-4 was admittedly to avoid having taxes withheld from his wages. However, these were not filed until 1983 and would not accomplish this purpose for 1982. Only five exemptions were claimed on the amended 1982 return, which is the year before us. So in order to get a refurn of the taxes he had paid for 1982, petitioner had to claim a deduction to offset the income from wages that he had reported on his original return. He did this by claiming a deduction for "cost of goods sold" in the amount of $19,083.00 on his amended return for 1982. When asked at trial what this deduction was attributable to, petitioner said he did not know, but it was definitely not attributable to his "Mixigo" business, which he said he was holding in reserve. Petitioner also denies that the deduction was based on his cost for the wages that he had received, despite the fact the Schedule C-1, Cost of Goods Sold, attached to this amended return lists only $19,083.00 as Cost of Labor," and also the fact that the Virginia Patriots and petitioner himself espoused the theory that wages are not income. So petitioner has left himself with no basis for the deduction here involved. Our analysis of this is that petitioner was willing to claim anything anyone suggested to him that would result in a refund of the taxes he had paid for 1982.