T.C. Memo. 1998-259


UNITED STATES TAX COURT


STEVEN J. AND JEAN L. LIDDANE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15738-96.                      Filed July 14, 1998.


Steven J. and Jean L. Liddane, pro sese.

Gerald W. Douglas, for respondent.


MEMORANDUM OPINION

BEGHE, Judge:  This case is before the Court on cross-motions for summary judgment under Rule 121[1] and respondent's motion to impose a penalty under section 6673.  Respondent determined a deficiency of $10,613 in petitioners' 1992 Federal

_____

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in issue.

income tax, an addition to tax of $1,255 under section 6651(a) for late filing, and an accuracy-related penalty under section 6662 for negligence.

Background

Petitioners resided in Lebanon, New Jersey, when they filed their petition. Petitioners filed responses to respondent's request for admissions, and the parties filed a stipulation of facts.

During 1992, petitioner Steven J. Liddane (petitioner) was employed by Transaero Corp., from which he received wages of $65,128 on which Federal income tax of $5,595 was withheld. Petitioner Jean L. Liddane is a housewife.

Petitioners did not file a timely 1992 Federal income tax return, and the omission came to respondent's attention. In July 1994, petitioners received respondent's Form CP-516 notice, stating that, in order to receive a refund of the previous year's withholding credit, petitioners needed to submit a return.

On December 6, 1994, the Brookhaven Service Center received a Form 1040, U.S. Individual Income Tax Return, signed by petitioners, on which they displayed their Social Security numbers in the appropriate boxes and claimed joint return filing status. The return showed zeros on lines 7 through 23, line 52, and line 64, on which items of gross income, adjusted gross income, and "the AMOUNT YOU OWE", respectively, are to be

reported. Petitioners left the return blank in all other respects; they claimed no refund of tax withheld from the wages of $65,128 shown on Form W-2 and did not attach Form W-2 to the return.

On April 24, 1996, respondent mailed a statutory notice of deficiency to petitioners, determining that petitioners had income of $65,128 from wages, and $20 from interest that respondent later conceded, applying the personal exemption and standard deduction amounts to arrive at taxable income, giving petitioners credit for the tax withheld from petitioner's wages, computing their tax liability by affording them joint filing status, and showing a balance due or underpayment of $5,019 and the above-described additions.

On July 22, 1996, petitioners timely filed their petition with this Court, disputing the unpaid portion of the deficiency and the additions on the ground that "We do not believe we owe the extra amount due above for this tax year". On October 23, 1996, petitioner sent an Internal Revenue Service (IRS) Appeals officer a letter containing three single-spaced pages of text that petitioner asked to have treated as "an integral part" of petitioners' return. This letter explains that petitioners filed the return in order to avoid criminal liability as nonfilers; it sets forth a series of canned arguments, accompanied by numerous citations, that petitioners may have regarded as fresh and

persuasive when they came to petitioners' attention, but which the Court for the most part regards as timeworn, tired, tax protester rhetoric. The letter also asserts that the Internal Revenue Code fails to define the term "income", that the income tax is "voluntary" and that petitioners do not choose to participate, and that the Code does not impose a liability for income tax on individual human beings, as opposed to "persons", a term that primarily connotes, in petitioners' view, artificial legal entities such as corporations. On August 29, 1996, respondent timely filed an answer that put the case at issue.

On May 6, 1997, the Court served its notice of trial, with standing pretrial order attached, calendaring the case for the Court's October 14, 1997, trial session to be held in New York City. On July 30, 1997, respondent filed a request for admissions, and on September 2, 1997, filed a motion to compel production of documents and a motion for summary judgment, each of which had been served on petitioners. On September 18, 1997, the Court received and filed, as petitioners' response to respondent's motion for summary judgment, petitioner's letter stating that he had moved with his family to Oregon to take new employment. The Court thereupon denied respondent's motions without prejudice, vacated the deemed admissions (petitioners later responded timely to the requests for admission), changed petitioners' address on the Court's records, retained

jurisdiction, and set the case for trial at the Court's March 16, 1998, Portland, Oregon, trial session.

On March 2, 1998, respondent's and petitioners' trial memoranda were received by the Court. In due course, they were filed as part of the record in this case. Petitioners' trial memorandum contains an index of citations of more than 60 authorities that includes, in addition to the Internal Revenue Code, IRS Publication 17, the 1992 instructions for Form 1040, Bouvier's Law Dictionary, 48 American Jurisprudence, 5 State court opinions, 30 opinions of the U.S. Supreme Court, and 21 opinions of lower Federal courts. Petitioners' trial memorandum charges respondent's notice of deficiency with failure to cite legal authority in support of its determinations, including the failure to explain, in support of their objection to the additions, why filing income tax returns is "mandatory".

At the hearing of this case, the Court provided respondent's counsel and petitioners with copies of the Court's opinion in Cocozza v. Commissioner, T.C. Memo. 1997-305, with citations of other such cases decided by the Court, including Talmage v. Commissioner, T.C. Memo. 1996-114, affd. without published opinion 101 F.3d 695 (4th Cir. 1996). Respondent's counsel informed the Court that he had already provided petitioners with a copy of the Court's opinion in Talmage, as well as copies of the Court's opinions in Greenberg v. Commissioner, 73 T.C. 806

(1980), and <u>Steele v. Commissioner</u>, T.C. Memo. 1997-307, as evidenced by his letter to petitioners of February 26, 1998, annexed as an exhibit to respondent's trial memorandum.  In each of those cases, the Court imposed a penalty against the taxpayer under section 6673 because of the frivolousness of the taxpayer's arguments.  That letter also notified petitioners that respondent intended to file a motion for a penalty under section 6673 "in an amount of at least $5,000.00, if you continue to assert your previously stated objections to paying taxes" because "As you can see by reading these cases, your objections to paying taxes are clearly frivolous and, even more to the point, have been repeatedly rejected by the Courts."

At the hearing, the Court explained to petitioners that their position has no merit.  The Court told petitioners that petitioner's letter of October 23, 1996, would not be treated as part of their return, but would be deemed a protest filed with the Appeals officer.  Although the facts of the case had been fully stipulated, petitioners had a prepared statement that they wished to read into the record.  The Court suggested that it would be more efficient to file the statement as a brief.  The parties thereupon each moved for summary judgment, and respondent filed a written motion for a penalty under section 6673 "in an amount not less than $10,000".

The Court ordered a seriatim briefing schedule, with petitioners to lead off, as they requested.  After an extension of time, petitioners filed a 52-page brief, with more than 130 citations of statutes, regulations, cases, and other materials, partially typed but largely handwritten, with three exhibits attached, consisting of the IRS Mission Statement, the White House press release accompanying the President's signature of H.R. 1226, the Taxpayer Browsing Protection Act, and an excerpt from 1953 hearings before the Ways and Means Committee, consisting of a portion of the testimony of Dwight E. Avis, Head, Alcohol and Tobacco Tax Division, Bureau of Internal Revenue, in which he stated, among other things:  "Your income tax is 100 percent voluntary tax and your liquor tax is 100 percent enforced tax".  Upon receipt of petitioners' brief, the Court issued an order informing the parties that they need not file additional briefs and that the case would be deemed fully submitted.

Discussion

Petitioners' brief, although much longer, by reason of the inclusion of copious quotations and additional citations, than the letter to the Appeals officer, adds nothing of substance to what was said in the letter.  In these circumstances, our recent comments in VonDyl v. Commissioner, T.C. Memo. 1998-120, are exactly to the point:

> Petitioner, by selectively analyzing statutes, regulations, and case precedent out of context, has

reached the conclusion that amounts he received from any and all sources do not constitute income. Petitioner, following in the footsteps of numerous others who have unsuccessfully attempted to rationalize a way to avoid paying Federal income tax, must also fail. We find petitioner's arguments to be either wholly without merit and not worthy of further analysis and/or previously addressed by this and other courts. See, for example, opinions addressing the question of whether compensation for labor is not subject to tax, such as Funk v. Commissioner, 687 F.2d 264 (8th Cir. 1982), affg. T.C. Memo. 1981-506; Broughton v. United States, 632 F.2d 706, 707 (8th Cir. 1980); Hayward v. Day, 619 F.2d 716, 717 (8th Cir. 1980); Rowlee v. Commissioner, 80 T.C. 1111, 1120 (1983). Further, we are not obligated to exhaustively review and/or rebut petitioner's misguided contentions. Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984).

Accordingly, we sustain respondent's determination
* * *

In an effort to help petitioners understand why and how their selective reading of dicta in old cases is at odds with more recent Supreme Court opinions that set forth the current correct approach to interpreting and applying the Internal Revenue Code that is followed by the Federal courts, we make the following additional observations.

Justice Holmes not only said, in Compania General de Tabacos de Filipinas v. Collector, 275 U.S. 87, 100 (1927), that "Taxes are what we pay for civilized society", but in his article, "The Path of the Law", 10 Harv. L. Rev. 457, 461 (1897), that "The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law", and "a legal duty so called is nothing but a prediction that if a man does or omits

certain things he will be made to suffer in this or that way by judgment of the court". Id. at 458.  Although these formulations may be somewhat simplistic, they have "a valid core", Reich v. Continental Cas. Co., 33 F.3d 754, 757 (7th Cir. 1994).  Our opinion in Talmage v. Commissioner, supra, cites numerous other cases, in addition to those cited in VonDyl v. Commissioner, supra, in which this Court and the Courts of Appeals have invariably rejected arguments that wages are not income for the purposes of the income tax law.  The information given to petitioners before and at the hearing should have made clear to petitioners that their case is a sure loser.

The fact that "income" is not a defined term in the Internal Revenue Code is of no moment.  The lack of a definition does not make the 16th Amendment or the Internal Revenue Code inoperative. As Judge Learned Hand stated in United States v. Oregon-Washington R.R. & Nav. Co., 251 F. 211, 212 (2d Cir. 1918), the meaning of the word "income" is "not to be found in its bare etymological derivation.  Its meaning is rather to be gathered from the implicit assumptions of its use in common speech".  The term "income" as used in the 16th Amendment and in the Internal Revenue Code "carries the meaning which an intelligent layman, not an economist or a lawyer, would ascribe to it".  Magill, Taxable Income 19 (1945 rev.).  Although there was a time in the early days of the Federal tax laws when the Supreme Court

regarded the problem as one that could be solved by arriving at an approved definition, which, incidentally, early on included income derived from labor, including salaries, wages, or compensation,[2] the current view, as expressed on behalf of the Supreme Court by Justice Holmes in United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931), is:  "We see nothing to be gained by the discussion of judicial definitions.  The defendant in error [the taxpayer] has realized within the year an accession to income, if we take words in their plain popular meaning".  See also Reading v. Commissioner, 70 T.C. 730, 733 (1978), affd. per curiam 614 F.2d 159 (8th Cir. 1980).

What petitioners and others who make the misguided arguments that the Court has waded through in this case have failed or refused to recognize, and must realize and understand, is that the courts no longer pay any attention to the metaphysical logic chopping and nit-picking of dicta from old cases about what is "income".  The correct view, which all Federal courts currently follow and apply, was made clear by Chief Justice Warren in the more recent opinions of the Supreme Court in Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955), and General Am. Investors Co. v. Commissioner, 348 U.S. 434 (1955), that the

_____

[2] The classic definition was worked out in a series of cases commencing with Stratton's Independence, Ltd. v. Howbert, 231 U.S. 399, 415 (1913), through Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918), and culminating in Eisner v. Macomber, 252 U.S. 189, 207 (1920).

receipts in question in those cases were included in taxable income under both the 1939 and 1954 Internal Revenue Codes. For example, in Commissioner v. Glenshaw Glass Co., supra at 432-433: "We would do violence to the plain meaning of the statute and restrict a clear legislative attempt to * * * bear upon all receipts constitutionally taxable were we to say that the payments in question here are not gross income." And again, in General Am. Investors Co. v. Commissioner, supra at 436: "In accordance with the legislative design to reach all gain constitutionally taxable unless specifically excluded, we conclude that the petitioner is liable for the tax and the judgment is affirmed."

These words are also "dicta", as are the words of the old Supreme Court opinions and other opinions and sources that petitioners selectively quote out of context. Dicta is a word that lawyers and judges use to refer to explanations or comments in a judicial opinion that are not necessary to the holding or result that is the court's actual decision. But, as explained in Reich v. Continental Cas. Co., supra at 757, in which the Court of Appeals applied and followed the dicta in a recent Supreme Court opinion on another subject:

> federal law is for all practical purposes what the Supreme Court says it is. When the Court's view is embodied in a holding, the Court's reluctance to overrule its precedents enables a confident prediction that that holding is "the law." When the view is embodied in a dictum, prediction cannot be made with

> the same confidence. But where it is a recent dictum that considers all the relevant considerations and adumbrates an unmistakable conclusion, it would be reckless to think the Court likely to adopt a contrary view in the near future. In such a case the dictum provides the best, though not an infallible guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it.

So much more so in the case at hand, as in the countless other cases in which misguided taxpayers such as petitioners have repeated the fruitless arguments that the income tax laws are ineffective or inapplicable in accomplishing their intended objective of raising governmental revenue from individuals who receive wage, salary, or other compensation income. The invariable practice of this Court and the Courts of Appeals in rejecting those arguments confirms that petitioners' arguments are frivolous. By enacting and amending the Internal Revenue Code, Congress, the people's elected representatives, has accomplished the purpose of providing the primary means of financing the costs of the Federal Government. This is the system under which both individuals and corporations will be required to pay their shares of the burden, at least until such time as Congress decides to repeal the income tax and try another way to raise the necessary revenue.

Petitioners' descriptions of the Federal income tax as a voluntary system that they and others who don't like to pay taxes can elect to participate in or not as they choose are based on a gross misunderstanding that can only be attributed to willful

"obtuseness".  See <u>Coleman v. Commissioner</u>, 791 F.2d 68, 72 (7th Cir. 1986) (quoted in <u>Talmage v. Commissioner</u>, T.C. Memo. 1996-114).  That misunderstanding arises from a false distinction between the way in which some taxes are determined and collected without the filing of a return, as by stamp or at the point of sale, and our self-assessment system of filing income tax returns in which taxpayers are required in the first instance to compute and report to the Government the amount of their taxable income and the resulting tax liability.  But, as Judge Learned Hand pointed out in his famous aphorism about income tax avoidance in <u>Commissioner v. Newman</u>, 159 F.2d 848, 850-851 (2d Cir. 1947):

> Over and over again courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible.  Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands:  <u>taxes are enforced exactions, not voluntary contributions</u>.  To demand more in the name of morals is mere cant. [Emphasis supplied.]

Again, the notion that the tax on the income from employment or labor of a human being is an unconstitutional tax on his existence, and that only artificial entities such as corporations, formed and continued by State action, can be subjected to income tax, is, in this day and age, even when alternative approaches to raising revenue are receiving legislative consideration, too quaint to require extended discussion.  In this connection, petitioners' notion that common speech restricts the term "person" to artificial persons is just

wrong. "Person" is the generic term; it usually refers to human beings; when it is extended to include other entities, such as corporations, they are included in the definition of person and, to provide clarity and contrast, the term "individual" is applied to human beings.

Petitioners are "individuals" within the meaning of the Internal Revenue Code. The fact that the term "individual" is not defined in the Internal Revenue Code is also of no moment. As previously stated, words in the Internal Revenue Code have their commonly accepted meanings as used in common speech.

Petitioners display similar obtuseness in asserting that the words of the Internal Revenue Code do not actually impose income tax liability on them. Petitioners have been led astray by whoever has sold them the bill of goods that they have so laboriously written out and filed as their brief. All that is required is actually to read the Internal Revenue Code. Section 1, entitled "Tax Imposed", provides in subsection (a):

There is hereby imposed on the taxable income of--

>    (1) every married individual * * * who makes
>    a single return jointly with his spouse under
>    section 6013 * * *

*    *    *    *    *    *    *

a tax determined in accordance with the following table:

*    *    *    *    *    *    *

If taxable income is:          The tax is:

\*   \*   \*   \*   \*   \*   \*

<u>Over $32,450 but not
over $78,400</u> . . . . . . . . <u>$4,867.50, plus 28%
of the excess over
$32,450</u>.

Married individuals who file separate returns or no return suffer tax liability at the higher rate of 31 percent on much the same amount of taxable income under section 1(d).

Section 61(a) defines "gross income" as "all income from whatever source derived", the formulation that Chief Justice Warren said, on behalf of the Supreme Court, in <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426 (1955), and <u>General Am. Investors Co. v. Commissioner</u>, 348 U.S. 434 (1955), was all encompassing, and which specifically includes, in paragraph (1), "Compensation for services".  Section 62 defines the intermediate term "adjusted gross income" minus certain defined deductions. Section 63(b) defines "taxable income" for individuals who do not itemize their deductions, as petitioners failed to do on their return document (and rejected the opportunity that we afforded them to rectify their omission), as meaning "adjusted gross income, minus-- (1) the standard deduction, and (2) the deduction for personal exemptions provided in section 151."  The standard deduction for 1992 is defined by section 63(c) as $5,000 in the case of a joint return, and the personal exemption amount for 1992 is $4,600 for two individuals.

Finally, civil tax liabilities are not criminal punishment. The requirement that the Government prove liability beyond a reasonable doubt, the standard applied in criminal cases, does not apply to civil tax liabilities. In any event, the burden of proof plays no role in this case. No facts are in dispute. Petitioners' stipulation that petitioner received wages of $65,128 is all that is needed to decide this case in respondent's favor.

Respondent's determination is sustained with respect to petitioner's wage income from Transaero Corp. We will deny petitioners' motion for summary judgment and grant respondent's motion. To give effect to respondent's concession on the $20 of interest, a computation under Rule 155 will be required.

Because petitioners' brief does not address the late-filing addition and the negligence penalty, we might have deemed petitioners to have conceded them, once we rejected petitioners' frivolous arguments on the merits of the tax liability. However, petitioner's trial memorandum, which was filed as part of the record in this case, takes the position that the section 6651(a) late filing addition and the section 6662 negligence penalty cannot be imposed because of respondent's failure to persuade petitioners, by reason of their "voluntary" argument, that there is a mandatory filing requirement. Inasmuch as we have rejected petitioners' argument on that score, their arguments against

the imposition of the addition and penalty cannot stand. Respondent's determinations are clearly correct and must be sustained. Petitioners filed their return more than a year and a half late. Their return position was inexcusably groundless, and their arguments have been clearly frivolous. As such, they evidence petitioners' continuing failure to make any reasonable attempt to comply with the applicable provisions of the Internal Revenue Code. The addition and penalty clearly apply to the underpayment to be determined in the Rule 155 computation.

We now turn to respondent's motion to impose a penalty under section 6673. Petitioners received a warning that respondent would move for a penalty under section 6673 because their position was groundless and their arguments frivolous. Respondent furnished petitioners with copies of similar cases, in which, after upholding the Commissioner's determinations, the Court imposed such a penalty on the taxpayers and in which the Court's decision to impose a penalty was upheld by the Courts of Appeals. Petitioners were given ample opportunity to recede in the face of the evidence provided by the Court and respondent of the overwhelming likelihood, amounting to certainty, that they would lose their case and that a penalty would be imposed if they persisted in their misguided time- and resource-consuming course of action. Petitioners' position in this case has been groundless and their arguments frivolous from the time they first

decided not to file a return, then filed a return taking a clearly groundless position, through the times of filing of their petition and the protest letter with its frivolous arguments that they sought to incorporate into their return, through the filing of their trial memorandum and their actions at the hearing, and concluding with their brief, all, as the Court of Appeals said in Coleman v. Commissioner, 791 F.2d at 71, "contrary to established law and unsupported by a reasoned, colorable argument for change in the law."

In these circumstances, we will exercise our discretion under section 6673(a)(1) and require petitioners, in addition to the underpayment of tax, the late filing addition, and the negligence penalty, to pay a penalty to the United States in the amount of $2,500.

In view of the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.